ROSENTHAL et al. v. McGRAW et al.

(Circuit Court of Appeals, Fourth Circuit. May 10, 1905.)

No. 514.

1. RECEIVERS—INCIDENTAL SERVICES RENDERED THIRD PARTY—RIGHT TO COMPENSATION.

Certain partnerships owning and operating oil properties sold an interest therein under an agreement that the purchaser should receive his proportion of the earnings of the properties, without any charge for their services in operating the same. Subsequently the firms became insolvent, and a receiver was appointed, who continued to operate the properties. *Held*, that he was not entitled to compensation for the incidental services rendered to the purchaser of the part interest, nor was the insolvent estate entitled to charge therefor, but was required to divide the earnings of the property in accordance with the contract.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Receivers, §§ 160–165.]

2. SAME—LIABILITY FOR INTEREST.

It was the duty of the receiver to pay over to the owner of the part interest his share of the earnings as made, and his failure to do so rendered him liable for interest on the sums withheld by him from the time of their receipt until he paid the same into court, and asked for directions as to their distribution.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1193, 1198.]

3. EVIDENCE—HEARSAY—TESTIMONY AS TO CHARGES IN BOOKS OF ACCOUNT.

The testimony of a witness as to an indebtedness, based upon his examination of charges made in books of account which were not made by him, and are in no manner authenticated, is hearsay and inadmissible.

138 F.—46

Appeal from the Circuit Court of the United States for the District of West Virginia.

Julius J. Frank, for appellants.

B. M. Ambler (Melville D. Post, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

PRITCHARD, Circuit Judge. This is an appeal from the decree of the Circuit Court of the District of West Virginia making certain allowances to the receiver. On and prior to November 1, 1895, the firms or copartnerships of Bettman, Watson & Bernheimer and Bettman & Watson were the owners of certain oil properties in the states of Indiana and Ohio. Thereafter they sold an undivided one-fourth interest in certain designated leases of these properties to the appellants, and continued to operate the same for the joint benefit of themselves and the appellants under an agreement to do so without salaries or compensation; the appellants to be charged only for their proportionate share of expenses and outlay. In March, 1898, this copartnership made a general assignment for the benefit of creditors in the state of New York. In May, 1898, a suit in equity was instituted in the Circuit Court of the District of West Virginia against Bettman, Watson & Bernheimer and Bettman & Watson, charging that such copartnership was insolvent; and John T. McGraw was appointed a receiver in such proceeding, by an order made July 19, 1898, and entered into possession of the properties of the insolvents, as well as that of the appellants, including oil properties, machinery, tools, etc., and continued to operate the same, selling and collecting the proceeds of the product. The property was operated by the receiver until December, 1900, at which time the appellants filed a petition in which they requested the court to make an order directing the receiver to turn over to them all property and money of every description then in his possession. In response to such petition, the court made an order requiring the receiver to pay to petitioners the sum of $12,000, to be charged to their account. Subsequent thereto appellants filed another petition, in which they alleged that the receiver was indebted to them in the sum of $11,457.37, with interest thereon from the 1st day of January, 1900. They also asked the court to require the receiver to account to them for all money and property in his possession.

A decree was entered referring the petition of the appellants to a master; requiring him, among other things, to report what money he had received "from the Rosenthal estate, involved with the property of Bettman, Watson & Bernheimer and Bettman & Watson; what proportion, if any, of the costs, expenses, and charges of the receivership should be chargeable to the Rosenthal estate; to make settlement of all matters in dispute between Bettman & Watson and Bettman, Watson & Bernheimer and the said Rosenthals; what compensation, if any, should be allowed the receiver, and those acting for and under him, in the handling, operating, and administering the Rosenthal estate in connection with the receivership of the

estates of Bettman and Watson and Bettman, Watson & Bernheimer." The special master, in his report, stated the account between the parties on the basis of monthly statements, commencing January, 1900. He charged the appellants with 5 per cent. of the gross receipts as compensation for the receiver's services, and with the further sum of $2,999.29 as due from them to the insolvents before the date of their assignment. He also refused to allow interest to the appellants on the sums in the receiver's hands. No services were rendered by the receiver to the appellants, except his operation of the property of the insolvents.

Max Drey, who is a creditor to the extent of $223,000, out of a total indebtedness of $265,000 of the estate of the insolvents, through his counsel, moved to dismiss this appeal on the ground that the court did not have jurisdiction. This motion was refused.

The master found that the receiver was entitled to 5 per cent. of the gross earnings of the property belonging to the appellants. The court did not make the allowance as found by the master, but, in lieu thereof, signed a decree which required 5 per cent. of the gross earnings of the property of the appellants to be paid into the general fund, and increased the receiver's compensation to an amount equal to that sum.

It is admitted that, by the original contract by which the appellants acquired their interest in the property, the insolvents agreed to contribute their services in the operation and sale of the products of the properties without salaries or compensation of any kind. The receiver, with knowledge of this fact, took charge of the properties belonging to the insolvents, and operated the same without calling the attention of the court to the fact that such an agreement was in existence. If the property of the insolvents had remained in their hands under the original agreement by which the appellants became the owners of the shares which they held, they would not have been entitled to any compensation whatever for any services rendered in operating and marketing the products of such properties. This part of the agreement between the insolvents and the appellants was a valuable consideration, and was no doubt one of the inducements which caused the appellants to purchase the property in the first instance. Under these circumstances, the receiver was not entitled to compensation for incidental services rendered in operating the property of appellants, and such charge on account of compensation to the receiver should not be made in the shape of general costs of administration, any more than to the receiver direct; and in this respect the decree is clearly erroneous.

We think that it was the duty of the receiver to turn over to the appellants the sums of money which he received from time to time as the proceeds of the sale of their property, and his failure to do so rendered him liable for interest on the sums thus retained from the time he received them until the same was paid into the registry of the court.

In Manhattan Cloak & Suit Co. v. Dodge, 21 N. E. 344, 6 L. R. A. 370, Elliott, C. J., of the Supreme Court of Indiana, who de-

livered the opinion of the court, in charging an assignee with interest, in favor of creditors, says:

"He was bound to exercise diligence to secure a statement of the amount of the claims presented to the court, and ask an order declaring a dividend. A trustee has no right to keep money from the beneficiaries, when by reasonable diligence he can secure an order for their benefit. He had no right to withhold all the money until his final report was filed, for dividends may be declared when the amount can be ascertained, although without absolute accuracy, as the court may approximate the exact amount. Doubtless the assignee may show an excuse, where one exists, for failing to secure an order declaring a dividend, but no such excuse is here shown."

In Schwartz v. Keystone Oil Co., 153 Pa. 283, 25 Atl. 1018, it was held that it was the duty of the receiver to advise the court as to funds in his hands, and ask for directions as to their distribution. At page 288 of 153 Pa., page 1019 of 25 Atl., the court said:

"If delay in distribution was unavoidable, then the receiver should have paid the money raised into court, or invested it at interest, under the order of the court, for the benefit of those to whom it should be awarded. * * * If he found himself with such a sum on hand as, if it had been his own, he would have invested it, it was his duty to ask leave of the court to invest it, and try in good faith to keep it invested, for the benefit of the owners. When the assets were turned into money, it was his duty to make out his account, and submit the fund to the discretion of the court."

Beach on Receivers (2d Ed.) § 757, p. 817, states the rule as follows:

"The receiver is personally liable for interest in two classes of cases: (a) When he has funds in his hands on which he could by proper management have collected interest: (b) when he is charged with interest as a penalty for neglect or misconduct."

In view of these authorities, it is clear that the receiver is liable for interest on two grounds: First, he had funds in his hands which he refused to pay the appellants, and on which he could, by proper management, have collected interest; he is also liable for interest as a penalty for failing to pay over the sums which came into his hands.

The appellants also contend that the court erred in affirming that portion of the master's report in which he finds from the testimony of the witness Watson that the appellants were indebted to the insolvent firms prior to their assignment. Watson testified that the only examination which he made of the books pertained to the Ohio and Indiana leases. He stated that none of the entries in the books were in his handwriting, and that he did not superintend the making of the same. He also stated that he did not compare any of the entries in these books with any of the original entries of record. Before these books could have been introduced as competent evidence, it was incumbent on the party offering them to show by competent proof that they correctly represented the items involved in the transaction which was then being considered. It was not shown that the party who made the entries was beyond the jurisdiction of the court. Neither was it shown that, by reason of insanity or other inability, he was not able to be present and testify as to the entries contained therein. And it does not appear that

the witness made a thorough examination, or that he was in a position to testify from his own knowledge of the truthfulness of any of the statements which he made. His testimony was hearsay, and should not have been admitted in the first instance. Chaffee v. United States, 18 Wall. 516, 21 L. Ed. 908; Nicholls v. Webb, 8 Wheat. 326, 5 L. Ed. 628. The witness, among other things, stated, "I found the account virtually correct as set forth in the books, as near as I am able to judge." In other words, he knew nothing about the entries in the books of his own knowledge, and based his statements upon the ground that he found several entries in these books, but did not undertake to say that they were genuine, or that he had any knowledge as to when or why they were entered. If it were competent to introduce this kind of evidence, all that would be necessary for one to do, in order to prove the contents of a book containing accounts, would be to have some one who knew nothing about the books, or the manner in which they were kept, testify that he had examined the same, and that on such examination he found certain facts to exist. This testimony was incompetent, and should have been excluded by the master. The rule in regard to the introduction of record evidence is plain and explicit. It has been universally held that, in order to render record evidence competent, it must be shown that the party who made the entry is beyond the jurisdiction of the court, or is, on account of death, insanity, or other disability, unable to appear in person and testify. In this case there was no foundation laid upon which to base the introduction of evidence.

We are of opinion that the Circuit Court erred in affirming that portion of the master's report which found that the appellants were indebted to the firm of Bettman, Watson & Bernheimer in the sums involved in this finding.

For the reasons stated, we are of opinion that the Circuit Court was in error. The cause is therefore remanded, with the direction that the decree be reformed in accordance with the views herein expressed.

Decree modified.