BUSH *v*. TAYLOR.

Opinion delivered December 2, 1918.

1. EVIDENCE—ADMISSIONS—JOINT INTEREST.—The receiver of a railroad, while operating trains over the line of another road, is so identified in situation and interest with such other road in the movement of trains as to make the train sheets of the trains moving over the latter's lines kept by it binding upon him.

2. EVIDENCE—BOOK ENTRIES.—Entries in books made by private parties in the ordinary course of business are admissible if contemporaneous with facts to which they relate, and if supported by suppletory oath of party who made entries, or one having personal knowledge of facts, if living and accessible; and if not living and accessible, or if insane, by proof of their handwriting.

3. EVIDENCE—BOOK ENTRIES.—Under the above rule, when the suppletory oath of living witnesses can not be had, then declarations, verbal or written, must sometimes be admitted, in order to prevent a failure of justice.

4. EVIDENCE—TRAIN SHEETS—NECESSITY OF AUTHENTICATION.—In an action against the receiver of a railroad for setting fire in operating trains over another road, train sheets kept by the train dispatcher of such other road showing daily movement of all trains, including those of receiver's road, though not supported by the suppletory oath of such train dispatcher or employee who made the entries, *held* admissible against the receiver.

5. EVIDENCE—TRAIN SHEETS OF RAILROAD.—While train sheets kept by railroad's train dispatcher from reports of local agents are competent in action against railroad for setting fire along right-of-way, they do not import verity, and are not, as matter of law, conclusive of facts recorded, their weight being a question for the jury.

Appeal from Clay Circuit Court, Eastern District; *R. H. Dudley,* Judge; affirmed.

*Troy Pace,* for appellant.

1. If the fire was set out by a Cotton Belt train, that company alone would be responsible. 126 Ark. 236. The evidence is largely conjectural and very unsatisfactory, there being many inconsistencies and contradictions. There is no legal evidence that the fire was set out by a train operated by the receiver and the instructions were error.

2. The train sheets or records of the train dispatcher and the testimony of the assistant superintendent were improperly admitted in evidence. 113 Ark. 417; 115 *Id.* 339; Jones on Ev. (2 Ed.), § 573; 2 *Id.* (1914 Ed.) 319; 17 Cyc. 368; 85 U. S. 516-541; 66 Fed. 522. They were not properly authenticated by the oath of the party making the entries. 57 Ark. 402, 415; 60 *Id.* 333, 342; 65 *Id.* 316, 320; 94 *Id.* 183, 190; 111 *Id.* 593-6; 115 *Id.* 339, 350. The best evidence must be produced. 91 S. W. 691; 3 L. R. A. (N. S.) 1190. See also, 113 Ark. 417, 421, 426.

*L. Hunter* and *Holifield & Harrison,* for appellee.

1. This is the second appeal in this case. 130 Ark. 522. The evidence supports the verdict and there is no error in the instructions. 97 Ark. 56; 59 *Id.* 325; 92 *Id.* 572.

2. There was no error in admitting the evidence of Hammond, the assistant superintendent, and the train sheets showing movement of trains. 2 Jones on Ev., § § 236, 237, 255-6, 270a, 272. The admissions of agents within the scope of their authority are admissible against the principal. 6 Ark. 138, 140; 37 *Id.* 52. Admissions of a party to the record are competent. 9 *Id.* 392; 37 *Id.* 593; 60 *Id.* 35.

3. The rule as to the suppletory oath authenticating the record has no application here because there is no reason requiring it. 31 Ark. 694; 93 *Id.* 214.

4. Train sheets are admissible in evidence. 1 White, Personal Injuries on Railroads, § 102; 158 Mass. 450; 33 N. E. 583; 3 L. R. A. (N. S.) 1190. They are always admissible when offered by the adverse party, even though not identified by the person who made the entries. 23 Am. & E. Ann. Cas. 366; 30 N. Y. 497; 20 N. H. 227.

WOOD, J. This is an action against appellants by the appellee. In December, 1915, B. F. Bush, as receiver of the St. Louis, Iron Mountain & Southern Railway Company, was operating trains over the railroad owned by the St. Louis Southwestern Railway Company, "commonly called the Cotton Belt." Appellee alleged that in operating such trains the agents and servants of appellant, Bush, communicated fire from one of the locomotives to appellee's saw mill, shingle mill and planing mill, adjoining the railroad, and thereby totally destroyed appellee's mill plant together with a large quantity of lumber, shingles and saw logs to his damage in the sum of $9,446, for which he prayed judgment.

The appellant, the St. Louis Southwestern Railway Company, in its answer admitted the operation of trains over its line of road by Bush as receiver of the St. Louis, Iron Mountain & Southern Railway Company, but denied that the property of the appellee was destroyed by fire as alleged in the complaint. The appellant, B. F. Bush, likewise admitted that he, as receiver of the St. Louis, Iron Mountain & Southern Railway Company, was operating freight trains over the track of the St. Louis Southwestern Railway Company, but denied specifically the other allegations of the complaint. There was a jury trial and judgment rendered in favor of the appellee, from which is this appeal.

Over the objection of appellant, J. R. Hammonds testified that he was the assistant superintendent of the Cotton Belt Railroad; that he kept records in his office showing the passage of trains through the different stations along the road. He had the record showing passage of trains through Rector on December 1, 1915. He

did not keep records himself. They were kept by the train dispatcher. They are the records that were taken out of the file of his office, where is filed a daily record of the movements of all trains. These records show that Cotton Belt engine No. 253 arrived there on December 1, 1915, at 6:15 p. m. and Missouri Pacific No. 32 arrived at 7:20 and departed at 7:26 p. m. These were all the trains that went through Rector between 6:00 and 9:00 p. m. A freight train went south about 8:05 p. m. without stopping. The record of that train slipped the witness when he was checking the others. The record was little blurred and witness finally testified that it was the Iron Mountain instead of the Missouri Pacific train. Witness had been assistant superintendent for only two months and was not in the employ of the Cotton Belt on December 1, 1915. He assisted the chief dispatcher in getting the records out of the files in the office at Illmo, Missouri, and had never seen the records but that time, and knew nothing personally about their correctness. All railroads kept records similar to those adduced. It was not possible to operate any great number of trains without train sheets like those in evidence. Where there are three or four trains, such a record had to be kept.

The above testimony, taken in connection with other testimony, tended to sustain the verdict and to prove that appellee's property was destroyed by fire caused by sparks from an engine of the St. Louis, Iron Mountain & Southern Railway Company at that time being operated by B. F. Bush as receiver. But, in the absence of the above testimony, the evidence was not sufficient. The appellant, B. F. Bush, therefore contends that the court erred in not excluding the above testimony, and this is the only issue for our determination.

Appellant relies upon the case of *St. Louis, I. M. & S. Ry. Co.* v. *Gibson*, 113 Ark. 417, to sustain his contention. That case was a suit against the railroad company for personal injuries and the company sought to prove the time when the train passed the station at Hope by the testimony of the station agent at Fulton, to the

effect that the operator at Hope told the witness that the train cleared the block at Hope at 5:50 p. m. The court held that the testimony was hearsay and incompetent, saying: ''It was just as necessary for the operator at Hope to keep a record of the arrival and departure of trains from his block as it was for the operator at Fulton to keep such a record. The record kept by the operator at Hope was just as accessible and just as easy to obtain as that kept by the operator at Fulton. Hope was situated in the county where the case was tried, and there is no reason why the operator at Hope was not examined and used as a witness to prove the time the train left the block at Hope going north. He could have testified of his own personal knowledge as to that fact and could have used the record kept by him to have refreshed his memory in the event it was necessary to do so. The declaration made by him to the operator at Fulton as to the time the train in question left the block at Hope was made after Gibson had been killed, and so was made at a time when there might have been occasion for him to have made a false declaration.''

It will be observed that the opinion was bottomed upon the fact that the testimony of the operator at Hope and his record kept at that station of the time when trains passed there, was primary and therefore the best evidence of what occurred there, rather than the testimony of a witness at another station of a record he had kept from information received through the declarations of operator at Hope as to what had occurred at the latter station. The opinion further shows that the evidence offered by the company in its own behalf was not only hearsay but it was in the nature of self-serving declarations.

Another case relied on by the appellant is that of *St. Louis Southwestern Ry. Co.* v. *Mitchell,* 115 Ark. 339. In that case the appellant requested the trial court to grant a prayer to the effect that the record of the movements of its trains must be accepted as any other written evidence made at the time of the transaction; and unless

the jury had reason to believe that such record had been changed or tampered with, they must find that it gave the correct movements of the trains. The court refused this prayer and in commenting upon that ruling we said: "There is nothing about these train records to import verity. Under some circumstances their recital might furnish evidence of a very satisfactory character, but the court can not say as a matter of law that these records were correctly kept. * * * Such evidence should be weighed by the jury like other evidence and given such weight as it appears entitled to have."

In neither of the above cases was the exact issue here presented for determination before the court and the doctrine of those cases, therefore, is not applicable. The question we have here is whether or not the train sheets or records kept in the office of the Chief Train Dispatcher of the St. Louis, Southwestern Railway Company and made by the Chief Dispatcher or one of his assistants, showing the daily movements of all trains passing through the station at Rector, is competent evidence when offered against the company and when such records are not authenticated by the suppletory oath of the particular employee who made the entries to the effect that the person making the entries had personal knowledge of the facts recorded and that the entries were contemporaneous with the occurrence of those facts, and when it was not shown that the person making the entries was dead or beyond the jurisdiction of the court.

The appellant, Bush, while operating trains over the Cotton Belt, was so identified in situation and interest with the latter company in the movement of trains as to make the records kept by the latter company binding on him. The Cotton Belt kept records or train sheets of the trains moving over its lines and all trains moving over its lines, whether its own or those operated by another, were bound by those records. The entries made by the Cotton Belt dispatcher of the movements of the trains operated by the Iron Mountain were as binding on the latter company as if same had been made by its

own dispatcher. For the purpose of keeping the record of the movement of trains shown by the train sheets, the Cotton Belt must be considered the agent of the Iron Mountain. The appellant invokes the familiar rule which has been approved by this court in many cases, that entries in books made by private parties in the ordinary course of their business shall be contemporaneous with the facts to which they relate and shall be supported by the suppletory oath of the party who made the entries, or one having personal knowledge of the facts, if such person be living and accessible, or if not living and accessible, or if insane, by proof of their hand-writing. *Railway Company* v. *Henderson,* 57 Ark. 402; *Railway Company* v. *Murphy,* 60 Ark. 333; *Chicago Mill & Lumber Co.* v. *Osceola Land Co.,* 94 Ark. 183; *Hall Bros. Co.* v. *Johnson,* 111 Ark. 593. See also 2 Jones, Comm. on Evidence, 1914 Ed., Vol. 2, 319; *Chaffee & Co.* v. *United States,* 18 Wallace 516, 541; *Rosenthal* v. *McGraw,* 138 Fed. 721.

Under this rule, however, where the testimony of living witnesses cognizant of the facts can not be had, their declarations, verbal or written, must sometimes be admitted, when they themselves can not be called, in order to prevent failure of justice.

Train sheets, according to the best of modern authorities, do not come within the ordinary rule applicable to books of original entry in ordinary commercial and business transactions. They seem to stand in a class to themselves and are admissible in evidence because of the improbability of their falsification on account of the purpose for and the manner in which they are kept.

In *French* v. *Virginian Ry. Co.,* 93 S. E. 585, the facts are very similar to the case in hand. In that case the court used the following language, which we approve: "The train sheets of a properly operated railroad must be accurately and properly kept by the train dispatchers, or else the lives and property of its passengers, the safety of its employees, and its own property are all imperiled. Indeed, a railway can not be operated unless

the train dispatchers are kept informed as to the location and movements of its trains. Outside of the court room no one would question the value of these records, for no other practical method has been devised to prevent collisions. Were these particular train sheets sufficiently identified as the record kept by those whose duty it was to keep them? While they should have been proved by the train dispatcher who kept them, failure to do so affects, not their admissibility, but their credibility, and the vital question is, not by whom they were proved, but whether or not they were the orginal train sheets. As the witness who was introduced testified that they came from the proper custody, that they were the original train sheets, and as there is nothing in the record to indicate any doubt of the fact, they are admissible.'' Other reasons are given in the opinion and numerous authorities are cited.

In *Donovan* v. *Boston & Maine Rd.*, 158 Mass. 450, it is said: ''As telegraphic messages are read by sound, as well as automatically recorded in symbols, entries stand upon the same footing as if made from oral statements uttered at the indicated station, and audible in the dispatcher's office; or, in view of the symbols in which the manipulation of his instrument by the operator who sends the message makes it visible at the receiving station, the entries are as if made from his signals given at East Somerville and visible in the dispatcher's office. These entries are not, therefore, governed by the rule applied in the cases on which the plaintiff relies.'' The manner in which the facts recorded by entries on the train sheets are made and the purposes for which they are kept and preserved, as already stated, afford the best guaranty of their trustworthiness and constitute them the best evidence in the very nature of the case that can be offered. See *Louisville & Nashville Rd. Co.* v. *Daniel*, 3 L. R. A. (N. S.) 1190.

The last two cases were cited by us in *St. Louis, I. M. & S. Ry. Co.* v. *Gibson, supra,* and distinguished from that case. But, while train sheets are competent, they

do not import verity and can not be said as a matter of law to be conclusive of the facts recorded. When offered, they are competent evidence to be considered, and the weight to be attached to them is a question for the jury. See *St. Louis Southwestern Ry. Co.* v. *Mitchell, supra.*

There is no reversible error, and the judgment is, therefore, affirmed.