HUDGINS PRODUCE COMPANY *v.* MISSOURI PACIFIC RAIL-
ROAD COMPANY.

## Opinion delivered July 14, 1919.

1. CONTRACTS BY CORRESPONDENCE — SHIPMENT OF FREIGHT — DESIG-
   NATION OF ROUTE BY BUYER—VARIANCE BY SHIPPER FROM INSTRUC-
   TIONS.—H. entered into a contract with V. for the purchase of
   potatoes, the negotiations being by telegram. H. directed that
   the potatoes in being shipped to it be routed a certain way. V.
   accepted H.'s stipulation, but routed the potatoes another way.
   There was a delay in the delivery of the potatoes due to the neg-
   ligence of the carriers. H. was obliged to accept the same upon
   arrival due to the order of the U. S. Food Administrator. *Held*
   V. violated the stipulations in the contract with reference to the
   route, which constituted a breach of the contract in that respect
   and rendered V. responsible for damages caused by the negli-
   gence of the carriers.

2. CONTRACTS—PURCHASE OF POTATOES—BREACH—DAMAGES.—H. or-
   dered potatoes from V. to be shipped by a certain route. V.
   shipped the potatoes by another route, thereby committing a breach
   of the contract, and rendering itself liable for damages resulting
   from the negligence of the carriers. *Held,* the finding of the jury
   fixing the amount of the damages was sustained by the evidence.

3. EVIDENCE—MOVEMENT OF CARS—RECEIPT OF CARS FROM CONNECT-
   ING CARRIER—RECORDS.—In an action against the delivering car-
   rier for damages growing out of delay in the delivery of a
   freight shipment, the car accountant of the carrier can not offer
   in evidence the record made under his supervision showing the
   daily movement of cars over the rails of the defendant carrier;
   such record is incompetent, being merely a narrative of past
   events.

Appeal from Miller Circuit Court; *Geo. R. Haynie,*
Judge; reversed.

*Webber & Webber* and *W. H. Arnold,* for appellant.

1. The delay was unreasonable and resulted in the
loss of the car of potatoes. Both defendants were liable.
The railway companies were of course liable, but they
were the agents of Varley & Co. and they were liable
also. The contract was to deliver the car to plaintiff
at Texarkana, Ark., and Hudgins Co. are not required
to look to the railway companies alone for reimburse-

ment.  118 Ark. 20, and notes to 5 Am. & Eng. Ann Cases 263, and 2 L. R. A. (N. S.) 79.  The rule is recognized in 77 Ark. 482; 88 Ark. 270; 89 *Id.* 342; 92 *Id.* 287.  Varley & Co. selected a different route and another line of railway and are primarily liable for the damages caused by the delay.  The car was forced on the plaintiff, Hudgins Produce Co., and they had no option but to receive it and they were entitled to damages to the amount of the difference between the contract price and what was received for the car, it being conclusively shown that plaintiff used all diligence to minimize the loss by selling the car to the best advantage.  Defendants are therefore liable to plaintiff for the difference.  209 S. W. 65; 81 Ark. 549.

2.  The railroad company was clearly liable.  The evidence offered by it was secondary, and the copies of the record offered were inadmissible and properly excluded.  118 Ark. 398; 86 *Id.* 484; 73 *Id.* 112.  The judgment should be reversed and judgment entered here for $1,023.23 upon the verdict.

*James D. Head,* for appellee Varley & Co.

1.  Appellee was not responsible for the delay.  The plaintiff as consignee had the burden of locating the shipment when it arrived in the yard under Food Administration Rules.  It was the duty of the railroad company to have notified the Hudgins Produce Co. of the arrival of the car when it came because it was perishable stuff, as the way bill showed.  It is admitted that the bill of lading showed that the produce company was to be notified of the arrival of the car and that it received proper advice as to the car number and initials.  It was the intention of the produce company to accept the car, and they led Varley & Co. to believe it would be accepted if it arrived the week of  March 5th.  All of these conditions were met, and plaintiff ought not to be heard to contend now that, although the car did arrive within the week, yet that because of the negligence of the railroad in failing to notify it of the arrival of the

car it could refuse to take the car. Such a position is in direct conflict with the rules and regulations of the Food Administration under which the produce company seek the benefit under another feature of this case.

Assuming that the position of counsel as to the potatoes being the property of Varley & Co. until they arrived is correct as a general proposition of law, yet the telegram referred to takes this case out of the rule, and the intention of the parties as to whose property the car should be must govern. 209 S. W. 65; 111 Ark. 521. The case in 118 Ark. 17, relied on by appellant, can not govern here, because under the terms of the contract there the purchase made "draft with bill of lading payable upon arrival and examination of the goods." And the case went off on the provisions of the contract itself that the buyer had the right to rescind the contract of sale and the remedy of the seller should have been against the railroad for its failure to deliver within a reasonable time.

This court has ruled as to who has the right to sue the railroad company for damages due to negligence or negligent delay in the carriage of goods. 112 Ark. 110; 106 Id. 477; 146 S. W. 537; 79 Ark. 353; 88 Id. 343. Under the Carmack Amendment when the produce company took up the draft and procured the bill of lading it alone had recourse against the railroad for delay in transportation. Were this matter not governed by said amendment, still the consignee having taken the goods was entitled to sue the carrier for damages for delay. 10 C. J. 297, 354; Hutchinson on Carriers, § 1318; 10 C. J. 2750; 161 S. W. 1144. Varley & Co. have no right of recovery for delay against the railway company. 30 L. R. A. 1071; 153 S. W. 201. See also 57 U. S. (L. Ed.) 314.

There was error in plaintiffs' instructions and in refusing those asked by defendant, Varley & Co.

2. The verdict is not justified nor sustained by the law or evidence as to Varley & Co. There is no competent proof to show that the produce company lost a

cent by reason of taking over the car of potatoes. The testimony as to disposition of the car of potatoes by statements from the books was not competent, as it was not shown who kept the books or that they were correctly kept and the bookkeeper was not called.

Morover the jury were entitled to take with them into the box matters of common knowledge of human affairs, etc. And again, the jury may have arrived at the conclusion that a portion of the damage to the produce company was caused by the failure of Varley & Co. to load in time and that the remainder was due to the negligence of the railroad company in failing to transport the same. The jury were warranted in finding such to be the case if they were allowed to consider the complaint of plaintiff.

The instructions as to the measure of damages were correct. 110 Ark. 112. Upon the record the only errors were against Varley & Co., and they are not complaining.

*E. B. Kinsworthy* and *R. E. Wiley,* for Missouri Pacific Railway Company.

1. The court erred in excluding the testimony of E. G. Trobaugh, the car accountant, at the head of the department, 103 Ark. 153, and the scale book record, 123 *Id.* 235, and the train sheets. 158 Mass. 450; 122 Ky. 269; 3 L. R. A. (N. S.) 1194; 207 S. W. 226. The way bill also was competent testimony.

2. There is no evidence to sustain the verdict against the carrier in favor of plaintiff or Varley & Co. There was no competent testimony to show any damage under the proper rule. The only measure of damages against the carrier possible would be the difference in the market value at destination at the time the potatoes should have arrived and the market value at the time they did arrive. 73 Ark. 112; 74 *Id.* 358. The damages claimed is special and consequential, and there is no testimony whatever that the carrier was advised of the facts which might render consequential damages likely or possible

if the shipment was delayed.   74 Ark. 358; 118 *Id.* 406; 90 *Id.* 452.

2.   Plaintiff can not sustain separate judgments for the same delay and damages against both principal and agent.   63 Ark. 30.   The carrier was Varley & Company's agent and had no priority of contract with plaintiff.   *Ib.*   It was error to refuse the instructions asked by the railway company, as they state the law.   *Supra.*

McCULLOCH, C. J.   Plaintiff Hudgins Produce Company is a domestic corporation engaged in the wholesale mercantile business in the City of Texarkana, and instituted this action against the defendant Missouri Pacific Railroad Company and Varley & Company, a foreign corporation, to recover damages on account of delay in the delivery of a carload of seed potatoes purchased by plaintiff from defendant Varley & Company. Varley & Company were doing business in Minneapolis, and the contract with plaintiff for the sale of the potatoes was negotiated through L. F. Eck, a broker in Texarkana.   The contract and the subsequent communications between the parties were conducted by telegraphic messages, except the last communication, which was a postal card from Varley & Company to the plaintiff, and those communications explain the whole transaction. The messages read as follows:

"2/13, 1918.

Varley & Company, Minneapolis, Minnesota.

Ship quick Hudgins Produce Company via C. G. Wabash and Iron Mountain car Triumphs 390 delivered.

(Signed)   L. F. Eck."

"Minneapolis, Minn., February, 13th.   L. F. Eck, Texarkana.   Would book Hudgins three ninety this low price.   Varley & Company."

"Mackay Telegraph-Cable Company," "February 14, 1918, Minneapolis, Minn.   L. F. Eck, Texarkana, Ark.   Booking Hudgins Produce Company immediate shipment weather permitting car Triumphs.   Varley & Company."

"February 16, 1918, Varley & Company, Minneapolis, Minn. Rush Hudgins Triumphs; wire car number, initials; quote more. L. F. Eck."

"Minneapolis, Minn., February 16, 1918. L. F. Eck, Texarkana, Texas. Hudgins car not loaded except equipment Monday unable to quote more until present orders filled. Varley & Company."

The postal card reads as follows:

"Minneapolis, Minn., 2/20; Gentlemen: We are today shipping Hudgins Produce Company at Texarkana, Arkansas, car 14636, routed Soo. E. JN. & E.-C. E. I. St. L. & I. M. from station 2/22 containing 240 sacks, 36,000 pounds Triumph. Thanking you for the order, we are yours very truly, Varley & Company."

The car of potatoes was loaded and shipped by Varley & Company on February 22, 1918, from Webster, Wisconsin. The routing directions contained in the messages evidencing the contract were not followed by Varley & Company, and the shipment was over a different route entirely, except the last carrier, the defendant Missouri Pacific Railroad Company, being successor to the St. Louis, Iron Mountain & Southern Railway Company. It was the custom of Varley & Company to make their shipments from the potato producing region to Peoria, Illinois, and then divert the shipments to place of destination under the contracts of sale, and that course was pursued in this instance. The potatoes reached Texarkana over the line of the Missouri Pacific Railroad Company on Saturday afternoon, March 9, 1918, but was not delivered to the plaintiff, nor notice of arrival given, until Monday morning, March 11th. The season for selling seed potatoes had then ended according to the proof, and it was too late to sell them for seed purposes, and the only available market was to sell them for eating potatoes. Under a ruling of the National Food Administrator the consignee of damaged or perishable produce was not permitted to reject a shipment and was required under the said ruling to accept it, and plaintiff was compelled under directions of the local repre-

sentative of the National Food Administrator to accept this shipment. The price of the car of potatoes under the contract between plaintiff and Varley & Company was $1,209.74, and the draft drawn by Varley & Company on the plaintiff was attached to the bill of lading, the consignment being to shipper's orders, and plaintiff paid this draft in order to obtain the possession of the bill of lading, and also paid the freight bill of $194.26, making an aggregate of $1,404. Plaintiff sold the potatoes for $380.67, and claims damage in the sum of $1,-023.33.

The suit is, as before stated, against Varley & Company and the railroad company. The court in its instructions told the jury, in substance, that under the contract whereby Varley & Company undertook to sell the potatoes to plaintiff and to ship to Texarkana to its own order for delivery to plaintiff, Varley & Company was liable for any damages caused by its own negligence in failing to deliver the potatoes to the carrier with reasonable diligence or for unusual delay caused by the carrier in transporting and delivering the potatoes. The court also gave the following instructions, among others, at the request of Varley & Company:

"If you find from the evidence that the plaintiff ordered through L. F. Eck, from Varley & Company, the potatoes in question, that the plaintiff was advised later that the shipment had not been made, and it was likely car for same could not be had till Monday, February 19th, and if you further find that, considering weather conditions, said car was loaded as soon after it was placed at the point of shipment as was reasonably practical and that Hudgins Produce Company did not then cancel order on receipt of such advice aforesaid, then you are advised that Hudgins Produce Company can not now complain of any such delay in loading said car of potatoes and can recover nothing on account thereof."

"If you find there was unusual delay in this shipment after its delivery to the initial carrier and that the same has been unexplained in any way by defendant

railroad, and if you further find that this delay caused damage, and that Varley & Company is liable to Hudgins Produce Company in any amount, then your verdict should be for the said Varley & Company against defendant railroad company, for such amount as you may find Hudgins Produce Company was damaged, if any, by reason of such unusual delay.''

The court also as a part of its oral instructions told the jury that if they should "find for plaintiff against Varley & Company then it will become the duty of the jury to determine whether or not there should be a verdict in favor of Varley & Company against the railroad company.''

The jury after deliberation returned into court and reported a verdict in the following form: ''We the jury find for the plaintiff in the sum of $500 damages against Varley & Company and the Missouri Pacific Railway Company jointly.'' Thereupon the attorney for Varley & Company objected to the verdict on the ground that it failed to state what part of the judgment should be against each defendant and because the jury had failed to make a finding on the question of liability as between the two defendants. After a short colloquy between the court and counsel representing the various parties, the court directed the jury to return and make a finding as to the rights of the two defendants whether or not Varley & Company was entitled to a verdict against the railroad company. Objection to this was interposed by plaintiff and the defendant railroad company. The jury then retired and later brought in a verdict in the following form: ''We, the jury, find for the plaintiff and assess the damages at $250 against Varley & Company and $250 against the Missouri Pacific Railway Company, each with interest at six per cent. per annum from March 13, 1918.'' The court rendered judgment on the verdict in favor of the plaintiff for the sum of $250 and interest against each of the defendants. The plaintiff and the defendant railroad company have appealed.

(1)   It is contended by counsel for plaintiff that the defendant Varley & Company is liable for all of the damages found by the verdict of the jury and that the court should have rendered a judgment for that amount notwithstanding the form of the last verdict.   Our conclusion is that this contention is correct and that the plaintiff is entitled to a judgment against Varley & Company for the sum of $500, with interest, as found by the jury. This is based on the undisputed evidence in the case that Varley & Company did not obey the instructions of the plaintiff in selecting the route of shipment, but adopted a route of its own selection.   Counsel debate the question whether or not the contract constituted an agreement on the part of Varley & Company to assume responsibility for an expeditious delivery of the potatoes at Texarkana so as to make them responsible for any delay caused by the negligence of the carrier, and also whether or not the railroad company is liable to the plaintiff for damages to the potatoes consigned by Varley & Company to its own order at Texarkana.   We do not, however, deem it necessary to go into a discussion of those questions, for if it be conceded that they should be decided against the contention of the plaintiff, the undisputed fact remains that Varley & Company violated the stipulations of the contract with respect to the selection of the route, which constituted a breach of the contract in that respect and rendered Varley & Company responsible for damages caused by the negligence of the carriers.   And, if defendant railroad company is responsible to the shipper for any part of the damage, the judgment is correct, for the finding of the jury is conclusive on the question of liability of the railroad company for that much of the damages, and no prejudice results for the reason that Varley & Company is entitled to a judgment over against the railroad company for the amount so found by the jury.

In the telegram proposing the purchase of the potatoes and specifying the terms, the plaintiff also specified the route of shipment and Varley & Company accepted

the proposal and undertook to comply with the contract according to stipulation. This constituted a contract to ship over the route indicated and a failure to do so was a breach of the contract. Plaintiff was compelled to accept the consignment when it arrived at Texarkana under penalty of having its license to do business revoked by the National Food Administrator. This imposed on the plaintiff the acceptance of the shipment, not according to the terms of the contract, but in violation of its terms, and the shipper is, therefore, responsible for the injury which resulted to the plaintiff, since it is settled by the jury upon sufficient evidence that the delay was unusual and must have resulted from the negligence of the carriers.

(2)    It is also insisted that according to the undisputed evidence plaintiff is entitled to recover a sum largely in excess of the amount found by the jury, but upon consideration of all the testimony in the case we are of the opinion that there was sufficient evidence to sustain the finding of the jury in that regard. The testimony adduced by plaintiff tends to show that the damage amounted to the difference between the cost of the potatoes, with freight charges added, and the amount which plaintiff received on resale of the potatoes, but we think that the jury might have drawn the legitimate inference that all of the damage resulted from the negligent delay after delivery to the initial carrier for shipment. Plaintiff acquiesced in the shipment on February 23, 1918, and was therefore not entitled to any damages accruing up to that time. The evidence shows the time required for the consignment from Minneapolis to reach Texarkana and the jury doubtless reached the conclusion that the delay caused by the negligence of the carrier did not justify the assumption that all of the damages resulted from it. The market for seed potatoes did not end on any particular day. In fact, plaintiff's telegram to Varley & Company shows that it was willing to accept the potatoes without claim of damages if the potatoes reached Texarkana during the week ending March 5,

1918. There was only a week's delay after that time and the market for seed potatoes was drawing to a close. The jury had a right to take those facts into consideration in determining whether or not the whole of plaintiff's loss was attributable to the delay in transportation. There was also a slight conflict in the testimony as to the market value of eating potatoes at the time plaintiff sold this car for that purpose.

(3) The railroad company asks for reversal principally on the ground that the court rejected testimony tending to show the time when it received the car of potatoes from a connecting carrier. Mr. Trobaugh, who held the position of car accountant with defendant Missouri Pacific Railroad Company, in his testimony offered to produce the record made under his supervision showing the daily movement of cars over the rails of defendant company, but the court held that the records were not competent without direct proof of correctness. It appears from the testimony of Mr. Trobaugh that these records were made up of reports of car checkers over the system so as to keep track of the movements and location of cars. It is contended that this record was competent evidence, the same as train sheets compiled by the train dispatcher showing movements of trains. We have decided that such train sheets are competent evidence either for or against the public carrier under whose supervision the records are made. *Bush, Receiver,* v. *Taylor,* 136 Ark. 554, 207 S. W. 226. There is no analogy between the two systems whereby these records are kept. The train sheet is a record made at the time the transactions occur, that is the time that the movement of trains are ordered and reported, and this constitutes a sufficient guaranty of the authenticity of the records to justify the admission of them as testimony; but, as we understand the testimony of Mr. Trobaugh, the records made under his supervision constitute merely a narrative of past events as reported by the car checkers, and for that reason the record is not competent. The question, we think, is ruled by the case of *St. Louis,*

*Iron Mountain & Southern Ry. Co.* v. *Gibson,* 113 Ark.
417, where it was held that in a suit to recover damages
for personal injuries caused by the operation of a train,
it was not competent to prove the time the train left a
certain station by the testimony of the operator at an-
other station to whom the information was telegraphed
by the operator at the station in question. It is argued
that a certain other record made by the train conductor,
and called ''wheel report,'' which showed the progress
of the car in question, was offered in evidence by the rail-
road company and improperly excluded by the court, that
it was competent under the rule announced above and
ought to have been admitted, but we can not discover defi-
nitely that such report was offered and what its contents
were. We, therefore, do not pass on the competency of
that report as evidence in the case. It is conceded that
without the excluded testimony, there was nothing in the
record to show when the carload of potatoes was delivered
to defendant carrier, and the presumption arises that
the delay occurred on its line as the delivering carrier.
*St. Louis, Iron Mountain & Southern Railway Co.* v.
*Coolidge,* 73 Ark. 112.

The judgment of the circuit court, will, therefore,
be reversed, and judgment will be entered here in favor
of plaintiff against Varley & Company for the sum of
$500, with interest from March 18, 1918, as found by
the jury, and the judgment in favor of plaintiff against
defendant railroad company for $250, with interest
aforesaid, is affirmed, but that amount is a part of the
sum recovered against Varley & Company, the plaintiff
being entitled under the verdict to the sum of $500, with
interest aforesaid. The plaintiff will be entitled to judg-
ment for the cost of appeal against both defendants.
It is so ordered.