ANDERSON, Respondent, vs. YELLOW CAB COMPANY, Appellant.

*December 6, 1922—January 9, 1923.*

*Carriers: Degree of care required: Taxicabs as common carriers.*

1. Whether or not, in a strictly technical sense, a company operating a taxicab line can be regarded as a common carrier of passengers, it is bound to use reasonable care: and in view of the nature of the business and the peril of the passengers likely to arise from an accident, this reasonable care should be defined as the highest degree of care consistent with the proper transaction of the business.
2. To constitute a public conveyance a common carrier it is not necessary that it come within the definition of a public utility so as to be subjected to the rules and regulations of a public utility commission, or that it should move between fixed termini or even upon fixed routes.

3. Where defendant owned twenty-eight taxicabs used for con-
veying passengers in a city, had a general office from which
they were dispatched, and they were operated pursuant to
a fixed rate applied to the number of miles traveled, regis-
tered on a taximeter, and, responding to plaintiff's request
to the general office, a taxicab was dispatched for her use
from its stand at a railroad depot, public policy requires that
it be classed as a common carrier.

APPEAL from a judgment of the circuit court for Mil-
waukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed*.

The appeal is from a judgment in favor of the plaint-
iff for the sum of $555.04 damages and costs.

The defendant is the owner of twenty-eight taxicabs
used for conveying passengers in the city of Milwaukee,
and it has a general office in such city from which taxicabs
are dispatched for the purpose of conveying passengers
from one place to another, such taxicabs being operated
pursuant to a regular rate applied to the number of miles
traveled, registered upon a device known as a taximeter.

The plaintiff, a married woman residing on Fifty-first
street between Vliet and Galena streets, in Milwaukee, on
the 14th day of June, 1920, phoned to the general office of
the defendant for a taxicab to convey her from the corner
of Grand avenue and West Water street in the city of Mil-
waukee to her home. Pursuant to an order of the defend-
ant, one of its taxicabs stationed at the Chicago & North-
western depot was dispatched to where the plaintiff awaited
the cab, and the driver, after receiving directions as to the
place of destination, proceeded on the journey, and when
he arrived at or about the intersection of Vliet and Fifty-
first streets the plaintiff was twice violently thrown from her
seat to the ceiling of the automobile and sustained severe
injuries. It appears from plaintiff's evidence that at the
place where the injuries were sustained the road was in a
defective condition and that the cab was driven at an ex-
cessive rate of speed.

The case was submitted to the jury upon a special verdict,

in which the jury found (1) that the cab was operated in such a manner as to cause the plaintiff to be violently thrown from the seat; (2) that the driver of the cab was guilty of negligence in operating it in such manner; and (3) that such negligence was the proximate cause of the injury.

After verdict the defendant moved, first, for judgment in its favor notwithstanding the verdict, and second, for the court to change the answers to questions 1, 2, and 3 of the special verdict from "Yes" to "No," and for judgment upon such verdict as so changed; and for a new trial for alleged errors contained in the instructions. Defendant's motions were denied by the court, and judgment was thereupon ordered and entered in plaintiff's favor as above stated.

For the appellant there was a brief by *Cannon, Bancroft & Waldron* of Milwaukee, and oral argument by *L. H. Bancroft.*

For the respondent the cause was submitted on the brief of *Wm. A. Schroeder* and *Horace B. Walmsley,* both of Milwaukee.

DOERFLER, J. The jury, among other things, was instructed as to the degree of care required by the defendant in the operation of its cab at the time and place in question as follows:

"The duty which the defendant, as a common carrier, owes to a passenger requires the defendant's employees, for the safety of its passengers, in the operation of its cars to exercise the highest degree of care reasonably to be expected from human vigilance and foresight in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of its business."

To this instruction defendant duly excepted, it being contended that the degree of care required by the driver of the cab is not that applicable to a common carrier, and that the

defendant in the instant case was not a common carrier, and that it was merely liable for injuries sustained as a result of the failure to exercise ordinary care. In other words, defendant contended that the degree of care required of its driver was that applicable to one hiring a private conveyance for a specific purpose from a garage or a livery stable.

The instruction given by the trial court is substantially in conformity with what has been laid down by the rule adopted in *Ferguson v. Truax,* 132 Wis. 478, 110 N. W. 395, 111 N. W. 657, 112 N. W. 513, and *Oberndorfer v. Pabst,* 100 Wis. 505, 76 N. W. 338, and such rule is the rule in Wisconsin as applicable to the degree of care required of common carriers. The *Ferguson Case* is one involving the liability of a proprietor of a passenger elevator to a passenger, and in that case the following statement from 1 Hutchinson, Carriers (3d ed.) sec. 100, is quoted with approval:

"The safety and lives of those who avail themselves of this means of carriage must of necessity be intrusted in a great measure to the care of those who control and operate the cars. The law, therefore, justly holds that, while the owners of passenger elevators are not insurers of the safety of their passengers, they are bound to exercise in their behalf the highest degree of skill and foresight, or, as some courts have expressed it, the utmost human care and foresight consistent with the efficient use and operation of the means of conveyance employed."

The language thus quoted from Hutchinson is apt, and is applicable to the instant case. The rule requiring the high degree of care referred to is based upon a consideration of public policy designed to protect the lives and limbs of passengers upon such conveyances.

Whether in a strictly technical sense the defendant can be regarded as a common carrier of passengers or not, the defendant was bound to use reasonable care according to

the nature of the contract, and in view of the nature of the business and the peril to life and limb of the passengers likely to arise from an accident, this reasonable care should be defined as the highest degree of care consistent with the proper transaction of the business. *Hinds v. Steere*, 209 Mass. 442, 95 N. E. 844.

In *Gardner v. Boston E. R. Co.* 204 Mass. 213, 90 N. E. 534, it is said:

"A common carrier of passengers either by rail or by water has so complete a control and the consequences of negligence on his part may be so serious that he is justly held to a very high degree of care for their safety; and accordingly it has been often said, both in this and in other jurisdictions, that he is held to the exercise of the highest degree of care."

The term "taxicab" describes a conveyance similar to a hackney carriage, but propelled by electric or steam power, and held for public hire at designated places subject to municipal control. Every element involved in the carriage of a passenger in a passenger elevator is included in the service performed by a taxicab. The operator of the taxicab is in no manner under the control of the passenger, excepting only with respect to the transportation to the place of destination. The operation of the cab is completely within the power and control of the operator. Like in a passenger elevator, the passenger is inclosed in a cab, and when he engages the services he places himself completely in the power of the operator. The cab itself is subject to the call of any member of the public. In fact, the defendant maintained for such service twenty-eight of these cabs. The particular cab in question was stationed at a railroad depot, presumably for the conveyance of travelers, and was dispatched to the place where the plaintiff required service by an employee at the office of the defendant. No specific bargain was made as to mileage or

rates, but the ordinary rule in vogue for passenger service for the benefit of the public was employed. The cab was supplied with a taximeter, which registered the mileage, and the fixed rates were applied to the actual mileage, and the sum charged was based both upon the rates and the mileage. Those employing taxicabs desire greater speed and convenience in transacting their business than is furnished by the ordinary street car or jitney bus.

In connection with what has been said, we cannot ignore our common knowledge with respect to the extent of the development of the taxicab business engaged in the transportation of members of the public in the larger cities. Such development has kept pace with the use of the automobile generally; and while the evidence in this particular case is not as complete and as satisfactory as it undoubtedly could have been made, nevertheless there is every indication persuasive of the fact that the defendant's business was operated pursuant to the usual and ordinary custom prevailing with respect to the taxicab business in general.

Defendant's counsel place great reliance upon the decision in the case of *Terminal Taxicab Co. v. Public Utilities Comm'rs,* 241 U. S. 252, 36 Sup. Ct. 583. In that case the court held that that portion of the defendant's business being four tenths of its entire business and which consisted mainly in furnishing automobiles from its central garage on. orders, generally by telephone, was not to be regarded as a public utility. In the *Terminal Taxicab Case* it was said that "The bargains are individual, and, however much they may tend towards uniformity in price, probably have not quite the mechanical fixity of charges that attend the use of taxicabs from the stations and hotels."

In the federal case referred to, a distinction was drawn between those cabs which travel between fixed points like hotels and railroad stations and taxicabs hired pursuant to an individual bargain at a fixed price. In rendering its

decision, however, the court freely admitted its doubt as to the correctness of the position taken by it.

A careful comparison of the facts in the federal case and the instant case will show that, while the service furnished by the defendant in the instant case was pursuant to a telephone call to the general office, the cab furnished was not stationed at the office but at the depot, and that no individual bargain was made for the service, but that the transportation proceeded upon a regular schedule based upon fixed rates and on mileage registered by a taximeter. The facts in the instant case would indicate quite clearly that the cab was for the general use of members of the public; that all members were treated alike, and were subjected to fixed charges.

In order to constitute a public conveyance a common carrier it is not necessary that it come within the definition of a public utility so as to be subjected to the rules and regulations of a public utility commission. *Newcomb v. Yellow Cab Co.* Pub. Util. Rep. 1916B, 985. To constitute the conveyance a common carrier it is not necessary that it should move between fixed termini or even upon fixed routes. *Parmelee v. Lowitz,* 74 Ill. 116; *Pennewill v. Cullen,* 5 Harr. (Del.) 238. It has also been held that fixed charges are not an essential attribute of a common carrier of goods. *Jackson A. I. Works v. Hurlbut,* 158 N. Y. 34, 52 N. E. 665.

Under the trend of modern judicial decisions it appears that the great weight of authority is in favor of holding a taxicab like that in the instant case as a public carrier. *Anderson v. Fidelity & Cas. Co.* 228 N. Y. 475, 127 N. E. 584, 9 A. L. R. 1544; *Cushing v. White,* 101 Wash. 172, 172 Pac. 229; *Carlton v. Boudar,* 118 Va. 521, 88 S. E. 174; *Georgia L. Ins. Co. v. Easter,* 189 Ala. 472, 66 South. 514; *Casualty Co. v. Joiner* (Tex. Civ. App.) 178 S. W. 806; *Lemon v. Chanslor,* 68 Mo. 340; *Lewark v. Parkinson,* 73 Kan. 553, 85 Pac. 601; *Jackson A. I. Works*

*v. Hurlbut,* 158 N. Y. 34, 52 N. E. 665; *Parmelee v. Lowitz,*
74 Ill. 116; *Donnelly v. P. & R. R. Co.* 53 Pa. Super. Ct.
78, 82; *Van Hoeffen v. Columbia Taxicab Co.* 179 Mo.
App. 591, 599, 600, 162 S. W. 694; *Primrose v. Casualty
Co.* 232 Pa. St. 219, 81 Atl. 212, 37 L. R. A. N. s. 618, 622,
623; Huddy, Automobiles (6th ed.) p. 152, sec. 131; 2
Moore, Carriers (2d ed.) 944.

From what has been said, we hold that public policy re-
quires that the taxicab in the instant case be classed as a
common carrier, and that the instruction of the court com-
plained of was proper.

We have carefully examined the evidence and find that
there is ample credible testimony to support the answers of
the jury to the questions of the special verdict. The dam-
ages found are not unreasonable but extremely moderate.

The judgment of the lower court must therefore be
affirmed.

*By the Court.*—Judgment affirmed.