## ASSOCIATION OF INDEPENDENT TAXI OPERATORS, INC. *v.* ELIZABETH KERN, ADMINISTRATRIX.

[No. 15, April Term, 1940.]

*Decided May 22nd, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*Harry O. Levin,* with whom was *C. Morton Goldstein* on the brief, for the appellant.

*Paul Berman,* with whom were *Theodore B. Berman* and *Levin & Hendelberg* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The plaintiff, Henry Kern, while crossing from west to east on South Charles Street in Baltimore, at its intersection with Hamburg Street, was struck and severely injured, as charged in the declaration, "by a taxicab which bore the name Diamond Cab and its color scheme and insignia, which said taxicab was under the management, direction, and control of the said Defendant Corporation (Association of Independent Taxi Operators, Incorporated)." The judgment being against the defendant, it appeals.

The defendant pleaded the general issue, and that it did not own the motor vehicle referred to in the declara-

tion. The special plea presented the real issue between the parties, and the one on which the defendant relied below and in this court. There was no denial of the plaintiff's testimony, supported by that of two boys who were near enough to see all that happened. The plaintiff was walking across South Charles Street at the southerly side of Hamburg Street between 6 and 6:30 o'clock on the evening of March 11th, 1938. He had reached the center of the southbound car track on Charles Street, where he stopped to allow an automobile, which was approaching from his right, to pass. Instead of going straight ahead the car turned left into Hamburg Street, and, as plaintiff described it, "He made a shorter turn than what I really expected; I didn't expect him to make." He said he was struck by the left rear side of the cab. He knew it was a Diamond cab; he was familiar with them; had often ridden in them. He didn't get the license number; "it kept on going" after it struck him. The other witnesses recognized it as a Diamond cab, but none of them got its number. The accident was not reported as required by law (Code, art. 56, sec. 196), and, so far as the record discloses, it is not known what car struck the plaintiff, and, from the description of the accident given by the witnesses, it may be that the driver did not know he had struck any one.

There were twenty-eight exceptions taken to rulings on the evidence, and one, the twenty-ninth, to rulings on the prayers. Only ten of the exceptions on the evidence were argued, and eight thereof resolve themselves into one group which may be considered as a whole. The only question argued on the rulings on the prayers was the rejection of the defendant's A and B prayers for an instructed verdict on the ground of legally insufficient evidence to support a verdict.

The defendant's main contention is that the cab, though it had on it a sign Diamond Cab, did not belong to it, but was the property of one of the members of the corporation (name unknown or not disclosed), by whom or one of his drivers it was driven, and subject only to

the control and direction of the owner, and, therefore, there was no relation of principal and agent by which the defendant here could be bound. Inasmuch as the cars all look alike, are easily identified and appear to be engaged in a common business, it is necessary, in passing on the demurrer prayers, to show what the plan or scheme of business is.

The defendant corporation is, as its name indicates, an association of independent taxicab owners; according to its constitution it "shall operate under the name of Diamond Cab, with the letters 'A. I. T. O.' painted on a red diamond. The color of each cab must be cream, with a red line running around same, black fenders and red wheels, which is copyrighted and posted at the State Capital." Until so painted no "car can pull into any of our stands, take calls, or operate as a Diamond Cab." It is not required by the constitution, or by-laws, but the president of the association testified that the name of the owner is painted plainly on the front door of the cab. Below, and, more conspicuously, is painted the phone number of the defendant. The words, Diamond Cab, are painted on the rear doors and on the rear end of the cabs. A member, on being accepted, for six months may be allowed three cars and thereafter not more than five cars. At the time of the trial it had seventy-nine members owning two hundred and eighty-two cabs. All cabs are licensed and registered by the Commissioner of Motor Vehicles under the names of the respective owners, by whom liability insurance policies are taken out, or other good and sufficient security given "for the protection of the public." Code (Supp. 1935) art. 56, sec. 187R. The cab was identified by the witnesses as a Diamond cab, and one of them testified to the telephone number on the cab as Calvert 6050. The defendant charges its members dues and maintains a central garage and service station, and has a central telephone exchange in the Equitable Building, with nine operators, into which all calls for cabs come, and thirty-nine telephone stations throughout the city where its members and their drivers

make and receive calls and directions. The defendant, in addition to the provisions of its constitution, issued a booklet for the use of drivers and owners containing schedule of rates, a list of taxi stands where telephones were installed, and ninety-two rules and regulations for the conduct of the business and operations of cabs, owners, and drivers, and the personal conduct and behavior of drivers of cars. It would take too much space, and serve no necessary purpose, to copy all the rules but two, Rule 87, which reads: "Patronage of Gas and Oil Stations of the Diamond Cab is compulsory for all drivers of Diamond Cabs. All violators of this rule shall be subject to immediate dismissal," and Rule 75: "Members and drivers must report every accident, no matter how small, to the Manager within twenty-four hours. (Apparently not done in this case). Disobedience to this rule carries heavy penalties," are illustrative of the connection, control, and interest between the defendant and its members. Section 5, of article V of the constitution provides that, "Members must instruct their chauffeurs to report any and all accidents, no matter how small, to the Association immediately for the protection of both the members and the Association as a whole."

The defendant contends that it has no liability because the management, direction, control, and supervision of drivers is in the owners of the cabs, that the evidence of this is on the record is not disputed, and it therefore becomes a question of law for the court and not a disputed one of fact for a jury, as held in *Vacek v. State,* 155 Md. 400, 142 A. 491. It bases its contention on the evidence that the association does not have the right to discharge chauffeurs. The answer to this is contained in section 7 of article III of the constitution, where it is said: "It shall be the duties of the Personnel Manager to have full control of the chauffeurs and employ any man with sufficient experience to operate a taxicab. He has the authority to suspend any chauffeur for any infraction of the rules of this Association and to refer said chauffeur to the Board of Directors for further ac-

tion. He has also the authority to settle all disputes arising between the employer and employee."

The record, in our opinion, and the portions of it here noted and quoted, show the control to be divided between the owners and the association, with the latter having the decision by which the owner must be bound.

It has been held in several cases, cited by defendant, that there is liability in the case of passengers in cabs operated under such a system or arrangement as we have here (*Middleton v. Frances*, 257 Ky. 42, 77 S. W. 2nd 425; *Meridian Taxicab Co. v. Ward*, 184 Miss. 499, 186 So. 636; *Richmond v. Clinton*, 144 Kan. 328, 58 P. 2nd 1116; *Economy Cabs v. Kirkland*, 127 Fla. 867, 174 So. 222; *United Transportation Co. v. Jefferies*, 211 Ind. 226, 5 N. E. 2nd 524; *Rhone v. Try Me Cab Co.*, 62 App. D. C. 201, 65 Fed. 2nd 834; *Johnson v. Brewer*, 266 Ky. 314, 98 S. W. 2d 889), but defendant argues that the same rule does not apply to pedestrians as to passengers. The difference is more apparent than real. It is not the difference between negligence and no negligence; the word spells and means the same in either case. The difference exists in a tacit agreement between the carrier and the passenger that the latter, in consideration of the fare, will be safely carried to his destination, but it only amounts to an argument to a jury, usually fortified by an instruction from the court, as to the degree, not kind, of care required of a carrier.

The defendant strongly relies on an illustration of Section 267, *A. L. Inst. Restatement—Agency*: "1. P, a taxicab Company, purporting to be the master of the drivers of the cabs, in fact enters into an arrangement with the drivers by which the drivers operate independently. A driver negligently injures T, a passenger, and also B, a person upon the street. P is not liable to B. If it be found that T relied upon P as one furnishing safe drivers, P is subject to liability to T in an action of tort."

We are not called on now to say whether we agree or disagree with this statement, for it does not exactly

fit the facts of this case. The contention that the drivers of Diamond cabs operate independently is disputed, and it thereby becomes a question of fact for a jury, as to whose agents they are, which is ordinarily a question of fact anyhow. *Jones v. Sherwood Distilling Co.*, 150 Md. 24, 32, 132 A. 278.

The case of *Callas v. Independent Taxi Owners' Assn., Inc.*, 62 App. D. C. 212, 66 Fed. 2nd 192, involved a Diamond cab in Washington, the facts of which are almost identical with those here, except that the cab owner was a party defendant. There the court said: "The case presents an aspect of the familiar but elusive problem of who is responsible for injuries caused by a cab performing under the colors and name of one of the so-called cab companies operating in Washington." The court made no distinction between the liability to passengers and pedestrians, which influenced the rulings of the trial court reversed on appeal. Quoting from *United States v. Milwaukee Refrigerator Transit Co.*, (C. C.) 142 Fed. 247, 255, it said: "If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." And the opinion in the *Callas* case concluded: "If a corporation chartered as a cab company may bring under its general control a fleet of a thousand taxicabs and hold itself out as a public service corporation engaged in their operation, and at the same time evade responsibility by showing that it is merely a beneficial association providing a centralized administrative bureau through cooperative effort, it is apparent that public authority should insure to the public some other protection against this growing menace." See also *Pennsylvania Railroad Co. v. Hoover*, 142 Md. 251, 120 A. 526; *Lassen v. Stamford Transit Co.*, 102 Conn. 76, 128 A. 117; *P. & S. Taxi & Baggage Co. v.*

*Cameron,* 183 Okla. 226, 80 P. (2nd) 618. Under the decision in *Vonder Horst Brewing Co. v. Amrhine,* 98 Md. 406, 410, 56 A. 833, the name, style, and color of the cab were sufficient to justify the jury in concluding that the driver of the cab was its agent. *Geiselman v. Schmidt,* 106 Md. 580, 68 A. 202. We, therefore, hold that there was sufficient evidence for the jury, in the absence of evidence of the actual ownership of the cab causing this accident, to hold the defendant responsible for the consequences of the accident testified to in this case, and the prayer for a directed verdict was properly refused.

The fourth exception was on a ruling of the court sustaining an objection to a question on cross-examination asked the defendant's president, called by plaintiff: "Did the association own any cabs or operate any cabs or have any license or permits from the Public Service Commission on March 11th, 1938?" The question is objectionable because too involved, in that it embraces three questions in one. The answer might be yes to all, no to all, or yes to one or two and no to the other or others. The court said the question would be allowed if the word "operate" were omitted, as that was a conclusion for the jury on the evidence. No harm was done, as the witness had already answered "no" to three questions which together embraced every element of the compound question. *Carlin v. Biddison,* 135 Md. 458, 109 A. 316; *Moller Motor Car Co. v. Unger,* 166 Md. 198, 170 A. 777. The ruling on the ninth exception was on a question objectionable because irrelevant and remote from the issue of operation or control by defendant.

The other exceptions, fifth and eleventh to seventeenth, inclusive, all related to testimony about insurance on cars for the protection of the public. Its first appearance in the case was when Mr. Adams, the president of the defendant corporation, on cross-examination by the defendant, had said, "The owner pays for any damages or other expenses. He pays for the license from the Public Service Commission or for the insurance on the various

cars." He later testified that all of the owners were insured in the same company, and none of them with indemnity to the defendant. The matter of insurance was then pressed by the plaintiff to the point where he called the agent of the insurer, during whose examination exceptions twelve to seventeen were taken. The question to be decided is not whether a defendant was insured, but whether he was negligent, so that it becomes a matter of relevancy to the issue involved.

If the insurance of the defendant is injected by the plaintiff, defendant usually moves for a mistrial, and is entitled to it; if by the defendant, whether by accident or design, there is no relief (*York Ice Machinery Corp., v. Sachs,* 167 Md. 113, 126, 173 A. 240; *International Co. v. Clark,* 147 Md. 34, 127 A. 647), but that does not entitle the plaintiff to make it an issue. After all, it was harmless error, as the undisputed evidence was that the defendant was not insured, and the jury could not, therefore, have been influenced by it, and the result shows that it was not produced by inflammation, excitement, or prejudice.

*Judgment affirmed, with costs.*