ADAMS *v.* SUMMERS.

5-276                                      263 S. W. 2d 711

Opinion delivered January 18, 1954.

*Francis T. Donovan* and *George F. Hartje,* for appellant.

*Guy H. Jones,* for appellee.

MINOR W. MILLWEE, Justice. On May 3, 1950, appellee, Mrs. H. V. Summers telephoned the "44 Taxi" service and requested a cab to take her to the Conway Memorial Hospital where she was employed as a practical nurse. Appellant Noel Moss, a cab operator, responded to the call in a car marked with "44 Taxi" on the door, and Mrs. Summers got into the front seat of the cab with the driver. She had thrown over her shoulders, but not buttoned, a large coat fastened at the neck with a pin; her arms were not in the sleeves of the coat. According to Mrs. Summers's testimony, upon arriving at the hospital she paid her fare to Moss, who reached over and opened the right front door, and just as she alighted Moss closed the door on her coat and drove off throwing her to the ground and dragging her some distance. While Moss denied that he closed the door on Mrs. Summers's coat, he admitted that he did not watch to see whether she had alighted safely before he drove off and stated that he knew nothing about the accident until he was called back to the hospital later.

On March 17, 1952, Mr. and Mrs. H. V. Summers brought this action for damages against appellant Jason Adams, doing business as "44 Taxi", and appellant Noel Moss as the agent, servant, and employee of Adams. The complaint alleged that Mrs. Summers had suffered various injuries; that she had formerly earned $200 per month as a practical nurse, and that by reason of her injuries she was permanently and totally disabled from performing any work or labor. Mr. Summers sought sums expended for medical care and hospital bills, and he asked damages for the loss of services of his wife.

From a judgment awarding Mrs. Summers $9,000 and Mr. Summers $1,000, appellants prosecute this appeal.

Appellants objected to various questions propounded by the attorney for appellee, on the ground that they were leading. Without setting out these questions, it is sufficient to say that the trial judge correctly ruled that they were posed in proper form.

Next appellants contend that error was committed in allowing the introduction of an advertisement published in a Conway newspaper in February, 1950, proclaiming that Jason Adams had purchased and assumed the management of the "44 Taxi Company," on the ground that the witness who testified concerning the ad had no personal knowledge of who inserted and paid for the ad and had not personally kept the newspaper's record book of advertising accounts from which he testified. In this connection the advertising manager of the newspaper testified that he solicited and handled all advertisements for the paper and that it was his duty to see that all ads were authorized. The permanent record of advertising accounts was kept under his supervision by another employee, and witness checked and verified the accounts at the end of each month. When witness was asked to state whether this record reflected the charge to Jason Adams in February, 1950, for the ad in question, appellants objected on the ground "that Adams was not the owner of the 44 Taxi at that time." Witness then testified, without objection, that the advertising record showed the charge to Jason Adams for the ad in question and that said account was paid in Jason's name on March 9, 1950. Witness further stated that he knew the account was correct and identified the ad in question as a part of the permanent records of the newspaper kept under his supervision, and it was introduced over appellants' objections and exceptions. In his testimony, Adams did not deny publication of the ad, or the truth of its contents, but merely stated that he did not remember publishing or paying for it.

Ark. Stats. § 28-928 recites: "In any court of record of the State, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible as evidence of such act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event

or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.'' This act is identical with the federal statute (28 U. S. C. A. § 1732). In *Hoffman* v. *Palmer,* 129 Fed. 2d 976, affirmed 318 U. S. 109, 87 L. Ed. 645, 63 S. Ct. 477, it was held to be the intention of Congress, in enacting the statute, to bring the decisions of all federal courts into line with the modern rule to the effect that it is sufficient to show that an entry made in the regular course of business is contained in a book of regular entries maintained in the establishment without producing the particular person who made the entry or having him identify it. A similar rule prevails in many jurisdictions in the absence of statute. 32 C. J. S., Evidence, § 693b (1) (b). There is also clear precedent for the admission of records of established accuracy though the person making the record is not present, or his absence fully accounted for, in *Bush* v. *Taylor,* 136 Ark. 554, 207 S. W. 226. Too, Mrs. Summers testified on direct examination that she knew of her own knowledge that appellant Adams operated the ''44 Taxi'' and that she had seen it advertised in the paper. We hold that the advertisement of Jason Adams's to this effect, so notifying the general public and prospective passengers, was properly introduced in evidence.

Appellants also contend that a mistrial should have been declared because the matter of insurance was mentioned on two separate occasions at the trial. The first instance occurred when Mrs. Summers was asked to relate a conversation she had with Moss and she stated he wanted to know whether she expected him or the insurance [company] to pay. The court promptly sustained appellants' objection and admonished the jury to disregard the remark. Appellants saved no exceptions to the ruling and admonition of the court and did not ask for a mistrial. The second instance occurred in the following manner when Mrs. Summers was being cross-examined by counsel for appellants: ''Q. Do you

remember giving a statement to Mr. Tankersly about this accident? A. Who is Mr. Tankersly? Q. Do you remember anyone coming out there and getting a statement from you or you signing a statement? A. No, sir. Q. You don't remember that? A. No, sir. Q. Didn't you say that my name is Effie Summers, I am 50 years of age, white, married, and reside at 531 Center Street —Mr. Jones: If your honor please, I don't know what this is all about. By the Court: Let her examine it. Is it purported to be a signed statement? Mr. Jones: Is this an insurance report, I want to see it—Mr. Hartje: I object to that statement and ask the court not to consider what he said here. I am going to ask the Court to pass this case until the next term of court. The Court: Ladies and gentlemen of the jury. The remark has been made here about insurance. I have admonished you once before and I want to admonish you again, not to consider any statement with reference to insurance coverage. It has no place in the trial of this case pro or con, and you are not to consider it for any purpose. Let me see the statement that you are using as a basis for your question. Witness: I want to know who this party is that he had reference to. (Mr. Hartje hands instrument to the Court.) The Court: That statement is not admissible because it is not signed by her. Any part or portion of the purported statement that Mr. Hartje used as the basis of his questions you are directed not to consider that for any purpose at all and totally disregard it. I want you to keep that clear in your minds; go ahead, Mr. Hartje."

Now "Mr. Tankersly" was never identified and it may well have been that he was an insurance adjuster. If so, error was clearly invited by counsel for appellants. It should also be noted that counsel was not being exactly candid with the witness or the court in his method of interrogation; and that there were no exceptions taken nor a request for a mistrial made after the jury was admonished not to consider the whole matter. Aside from the fact that exceptions were not taken to the rulings of the trial court, we have repeatedly held that error

in bringing the insurance angle into a case can be cured by proper cautionary instructions of the trial judge where the error is not so flagrant as to produce a deep-seated and irremovable prejudice. *Central Coal and Coke Co.* v. *Orwig,* 150 Ark. 635, 235 S. W. 390; *Malco Theatres* v. *McClain,* 196 Ark. 188, 117 S. W. 2d 45; *Beatty* v. *Pilcher,* 218 Ark. 152, 235 S. W. 2d 40. Under the circumstances presented here, we are of the opinion that the prompt action of the court eliminated any prejudice resulting from the references to insurance.

Appellants also urge error in permitting the following question and answer: "Q. Is it more reasonable that a person of her size, sex and age would suffer more bruises and lacerations and shock from being drug by an automobile than a smaller person or a man or a younger person? A. Yes, sir." The witness in this interrogation was a doctor whose qualifications were admitted. Appellants contend that the jury was given the impression that there were probably more injuries than the doctor had told the jury about, and that the doctor's answer amounted to an opinion by one who was not an expert on the susceptibility to injury of persons of variated sizes, sexes, and ages. It is hard to see how appellants' case was prejudiced by this answer; also, it seems reasonable that a doctor, in his years of treating diverse persons for injuries, would become reasonably expert on the effect of certain accidents on persons differing in age, sex, and size. Appellants also objected to the following question and answer: "Q. As her doctor, did you do everything you could to mitigate her suffering? A. Yes, sir." Appellants say this interchange left the jury with the impression that medical science could do no more for appellee and that she would continue to suffer pain indefinitely. It is quite possible that that is precisely what the doctor did intend to tell the jury, and he was competent to do so.

Appellants also challenge the sufficiency of the evidence to support the verdict. The most serious question is the sufficiency of the evidence to support the finding of agency upon which the verdict against Jason Adams

was predicated. However, the newspaper advertisement discussed above announced Jason Adams to be the owner and operator of "44 Taxi." Adams admitted a modicum of control over the drivers when he testified that he would not allow them to drive while intoxicated, and the cabs bore the marking "44 Taxi" on their sides. These facts tended to show the existence of the employer-employee relationship. Appellants offered evidence to the effect that Adams did not own the cab operated by Moss and some of the other drivers who merely paid rental for use of the taxi stand when they chose to work. This presented a fact question for the jury's determination as to whether Moss was an employee or an independent contractor and the finding of the jury on this issue is binding on us. *Wright* v. *McDaniel,* 203 Ark. 992, 159 S. W. 2d 737; *Boone* v. *Massey,* 212 Ark. 280, 205 S. W. 2d 454; *Rose* v. *Black and White Cab Co.,* 222 Ark. 210, 258 S. W. 2d 50.

In *Plunkett-Jarrell Grocer Co.* v. *Freeman,* 192 Ark. 380, 92 S. W. 2d 849, the court quoted with approval from *Callas* v. *Independent Taxi Owners' Association,* 66 F. 2d 192: "There was no direct evidence as to who was the owner of the truck that inflicted the injury, nor as to who was in charge of it when the injury occurred. There was evidence, however, that the truck bore the name of the defendant company. This was sufficient to establish not only *prima facie* that the defendants were the owners of the truck, but also that it was then in charge of their servant or employee. This was presumptive evidence, and as has frequently been ruled, was quite sufficient to carry the case to the jury." See, also, *Mullins* v. *Ritchie Grocer Co.,* 183 Ark. 218, 35 S. W. 2d 1010. It has also been held that ownership of the cab is not a prerequisite of liability for a passenger's injuries under circumstances similar to those in the instant case. *Economy Cabs* v. *Kirkland,* 127 Fla. 867, 174 So. 222; 13 C. J. S., Carriers, § 701; Blashfield, Cyclopedia of Automobile Law and Practice, § 2213.50. The evidence here is sufficient to sustain the verdicts and the trial court correctly

refused to direct a verdict in favor of either of the appellants.

We cannot agree with appellants' further contention that the verdicts are excessive. According to the medical evidence offered by appellees, Mrs. Summers was rendered totally and permanently disabled to pursue her profession as a nurse by the injuries which she sustained and which resulted in thrombophlebitis and a coronary insufficiency. She incurred medical and hospital expenses of more than $3,800 and sustained a total loss of income from her profession by reason of her injuries. She has and will continue to suffer considerable pain, according to the testimony.

We have considered other assignments of error argued by appellants and find no prejudicial error in the record. The judgments are, therefore, affirmed.