BLACK AND WHITE, INC. v. LOVE.

5-2984                                    367 S. W. 2d 427

Opinion delivered May 6, 1963.

[Rehearing denied June 3, 1963.]

*Wright, Lindsey, Jennings, Lester & Shults* and *Philip S. Anderson, Jr.,* for appellant.

*William Slater Hollis,* for appellee.

ED. F. McFADDIN, Associate Justice. This case arises because a passenger was injured in a taxicab. The appellee, Black & White, Inc., is an Arkansas corporation, engaged in the operation of taxicabs in the City of Little Rock. On the night of October 24, 1958, Mr. and Mrs. W. C. Love, visitors in Little Rock, along with three other married couples, had a late supper at a restaurant located on Thirteenth Street in Little Rock, and all decided to return to their hotel. Mr. Love called Black & White for two cabs. In a few minutes when the first cab arrived at the restaurant, the driver inquired of Mr. Love if he was the person who had ordered two cabs, and Mr. Love responded in the affirmative. The four ladies entered that cab, to be transported to the hotel; and the four men followed in another cab which came in a few seconds. Enroute to the hotel the cab occupied by the ladies was involved in a traffic mishap and Mrs. Love was injured.

Mr. and Mrs. Love, as plaintiffs, filed action on July 27, 1961, against Black & White, alleging that Mrs. Love was injured because of the negligence of the driver of the cab in which she was riding as a passenger, and that both Mr. and Mrs. Love suffered damages because of her injury. The defendant filed a general denial on August 11, 1961. After the expiration of three years from the date of Mrs. Love's injury, there was an unsuccessful attempt by Mr. and Mrs. Love to add Checker Cab Company as a defendant. The sole defendant, Black & White, Inc., claimed, *inter alia*,[1] that it was not a Black & White cab in which Mrs. Love was injured. Jury trial resulted in a verdict and judgment for Mr. and Mrs. Love for a total of $2,298.00; and Black & White brings this appeal, urging ten points, which we group in suitable topic headings.

I. *Admission Of Evidence.* (a) The Court permitted Mr. Love to testify that he looked in the telephone directory and found the telephone number for Black & White and called that number and ordered two cabs to be sent to the restaurant. The appellant claims the admission of this evidence was error. We hold against the ap-

---

[1] The issue of whether the driver of the taxicab was negligent is not presented on this appeal.

pellant on this point. Certainly Mr. Love's testimony, that he ordered two cabs from Black & White, had a direct bearing on the case. Mr. Love testified that he placed his wife in a Black & White cab. Mrs. Love became a passenger in the cab in which her husband placed her. She did not have to personally order the cab. Her husband did that for her; and she testified that she was injured while a passenger in a Black & White cab in which her husband had placed her.

(b) Mr. Love was permitted to testify that when the first cab arrived at the restaurant, the driver inquired of Mr. Love if he was the party who had ordered two cabs. We find no error in the admission of this evidence. Mr. Love's testimony, as to the inquiry made by the driver, was cogent evidence that the cab came in response to Mr. Love's order. Unless the driver knew of the order which had been made to Black & White for two cabs, the driver could hardly have made the inquiry which he did.

(c) The police officer, who investigated the traffic mishap while both vehicles were at the scene, testified that his report, made at the time, showed that the cab was a Black & White cab. We find no error in the admission of this evidence. The mishap occurred on October 24, 1958, and the witness was testifying on September 26, 1962. He had a right to refresh his memory and refer to his official report made at the time of the mishap. The defendant had the right to cross examine the witness, as was skillfully done, but such right of cross examination did not render erroneous the admission of the testimony on direct examination.

(d) Anticipating that the defendant would introduce evidence — at it did — that Checker Cab Company was an entirely separate corporation from Black & White, the plaintiffs, over the objection of the defendant, were allowed to prove:

". . . that there is one radio dispatcher for both the Checker Cab Company, Inc. and Black and White, Inc., who dispatches the nearest cab to the scene where the customer is to be picked up whether said cab be a Checker or a Black and White cab, so that it would be possible

for a person calling Black and White Cab Company to be picked up by a Checker cab . . . There is one switchboard located at 114 East Markham which receives all incoming calls for both Checker Cab Company, Inc. and Black and White, Inc. and which is operated by one person. Both the radio dispatcher and the switchboard operator were on the payroll of Black and White, Inc. only on October 24, 1958 and for a long period of time before that."[2]

The Court allowed the foregoing quoted testimony; and we find no error committed. The plaintiffs were making an effort to pierce the fiction of the corporate entities of Black & White, Inc. and Checker Cab Company; and the way the two corporations operated — like a joint venture — was a cogent fact which the plaintiffs were entitled to show.

II. *Remarks Of The Trial Judge In The Presence Of The Jury.* The defendant introduced evidence to the effect that there were in fact three corporations: (1) Capital Auto Leasing & Renting Corporation, which actually owned the motor vehicles and leased them to either of the other two corporations; (2) Black & White, Inc., which operated a taxicab business; and (3) Checker Cab Company, which also operated a taxicab business. Then on rebuttal the plaintiffs offered in evidence the entire stipulation heretofore mentioned in the footnote in Topic II, *supra.* The facts had been stipulated, but the defendant had all the time preserved its objection to admissibility. This stipulation covered, *inter alia*: (1) the identity of the shareholders and officers of each of the three corporations; (2) the division of the salaries of the officers between the three corporations; (3) "That it is the nature of the business of both Checker and Black & White cab companies for drivers to drive either company's cab when the particular cab that has been assigned to them is being repaired or maintained"; (4) that the

[2] The parties had entered into a lengthy stipulation concerning the two corporations (*i. e.*, Black & White, Inc. and Checker Cab Company), the identity of the stockholders, the blending of business by the two corporations, etc., etc. The stipulation was as to facts, with defendant preserving its objection as to the admissibility. The Court admitted into evidence to the jury the portion shown in the quotation above. The matter of this stipulation is further discussed in Topic II, *Infra.*

officers of the three corporations are identical; (5) that for several months prior to this accident all the cab drivers simply rented their cabs for $10.00 for twelve hours, and there was no written contract between the companies, and the cab drivers' rental agreement was a day to day proposition.

When the plaintiffs offered the stipulation in rebuttal, the defendant questioned the relevancy and/or materiality of the stipulation, and the Court said: "gentlemen, I believe I will let that stipulation be introduced in the record without benefit of it going to the jury because I think what the Court is going to tell the jury to some extent renders this testimony which has just been introduced, and this stipulation, immaterial."

The appellant complains that the language of the Court, as above quoted, was a comment on the weight of the evidence. But under the facts in the case at bar, we hold against the appellant's contention. The Trial Court was merely telling the attorneys that his instructions would render the stipulation immaterial as evidence for the jury to consider, which was true. The instructions given by the Trial Court rendered his remark entirely harmless.

III. *Instructions.* We come then to the big issue in this case, and this relates to the instructions. The appellant here complains of four of these instructions; but what we say about Instruction No. 4 will dispose of appellant's arguments on all four. The Court's Instruction No. 4 reads:

"You are instructed that if you find from a preponderance of the evidence that on the 24th day of October 1958, at about 11:00 P.M., the plaintiff, William C. Love, called the Defendant, Black & White Cab Company, Inc. and requested that it send two cabs to the Brown Jug Restaurant for the purpose of transporting the plaintiffs as passengers in the cabs from said restaurant to their hotel, in Little Rock, and if you further find that pursuant to said call, if any, the Black & White Cab Company dispatched two cabs to the designated address and that one of such cabs, if any, so sent, undertook to

transport the plaintiff, Mrs. Love, to her hotel, you are told that the question of the ownership of the cab would be immaterial since under such findings, if any, by you, the Black & White Cab Company would be legally responsible for a failure, if any on the part of the driver of the cab so dispatched to exercise the highest degree of care toward a passenger in the cab.''

In effect, by this instruction the Court told the jury that if Mr. Love called the Black & White Company and ordered two taxicabs, and Black & White elected to send a Checker cab, then Black & White would be liable for the acts of the driver of the Checker cab, just as it would have been liable for the acts of the driver of a Black & White cab. We find no error in the said instruction under the peculiar factual situation shown in this case (and we have not been able to find another case exactly the same). Whether the Trial Court gave the instruction on the theory of joint venture, or on the theory of piercing the entity of the corporate fiction, is not disclosed by the record; but either theory would have justified the instruction.

It was shown here that the two corporations (Black & White and Checker) were so interwoven that there was only one radio dispatcher for both corporations; and the dispatcher sent the nearest cab to where the customer was to be picked up, regardless of whether it was a Checker cab or a Black & White cab. When Mr. Love ordered two cabs from Black & White (as the uncontradicted evidence shows that he did) then Black & White certainly engaged in a joint venture[3] with Checker in sending a Checker cab, if such was actually sent. The operator on the switchboard and the radio dispatcher for the cabs were both on the exclusive payroll of Black & White at the time here involved. Thus the evidence showed a joint venture between the two corporations.

Furthermore, the two corporations were owned by the same stockholders, operated by the same officers, and the cabs were interchanged. It would be putting

[3] See *Martin* v. *Weaver* (Tex. Civ. App.), 161 S. W. 2d 812; and see 48 C. J. S. p. 809 *et seq.*, "Joint Adventures" § 2 *et seq.*

fiction above right and justice to allow Black & White to hide behind the corporate entity of Checker in this case.[4] In *Rounds and Porter Lbr. Co.* v. *Burns,* 216 Ark. 288, 225 S. W. 2d 1, we said: "It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entity should be disregarded." See also *Plant* v. *Cameron,* 228 Ark. 607, 309 S. W. 2d 312.

There are a wealth of cases involving liability of taxicabs claimed to be owned by one party and driven by another, and to discuss these cases[5] would unduly extend this opinion. But the general trend of the holdings seems to be summarized by the Supreme Court of Florida in *Economy Cabs* v. *Kirkland,* 174 So. 222:

"One of the first principles of hornbook law we were taught in the law school was that for every wrong the law provides a remedy. If the law is to be circumvented by litigants as proposed here, then we were taught a futile lesson. They should not be permitted to parade under a flag of truce to garner a profit and then raise the black flag when called on to make restitution for damage perpetrated. *Callas* v. *Independent Taxi Owners' Ass'n,* 62 App. D. C. 212, 66 F. (2d) 192; certiorari denied, 290 U. S. 669, 54 S. Ct. 89, 78 L. Ed. 578; *Vance* v. *Freedom Oil Works Co.,* 113 Pa. Super. 280, 173 A. 496; *Bank of U. S.* v. *Dandridge,* 12 Wheat. (U. S.) 64, 6 L. Ed. 552. This rule applies to and governs all persons to whom defendant furnished transportation, including the plaintiff and those who deal with Economy Cabs as a corporation. Third parties who happen to own a cab and use it in the name of the company at the call of the company and under the colors of the company will be treated as the company. *Anderson* v. *Yellow Cab Co.,* 179 Wis. 300, 191

---

[4] On piercing the fiction of the corporate entity in taxicab cases, see particularly *Callas* v. *Independent Taxi Owners,* 66 F. 2d 192.

[5] Our own case of *Adams* v. *Summers,* 222 Ark. 924, 263 S. W. 2d 711, has only an indirect bearing on the point here; but see Annotations in 120 A. L. R. 1351 and 131 A.L.R. 797, entitled, "Relation between taxicab company and drivers or owners of cars not owned by company, as regards responsibility for injury or damage." See also *Rhone* v. *Try Me Cab Co.,* 65 F. 2d 834; *Assoc. of Independent Taxi Operators* v. *Kern* (Maryland), 13 A. 2d 374; *Mull* v. *Colt Co.,* 31 Federal Rules Decisions 154; and 13 C. J. S. p. 1314, "Carriers" § 701.

N. W. 748, 31 A. L. R. 1197; *Burke* v. *Shaw Transfer Co.*, 211 Mo. App. 353, 243 S. W. 449; *Rhone* v. *Try Me Cab Co.*, 62 App. D. C. 201, 65 F. (2d) 834.''

Under the peculiar facts in this case we find that the Court was justified in giving the Instruction No. 4; and finding no error in the entire case the judgment is affirmed.

GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, J. (dissenting). I think the trial court made a mistake in telling the jury, in Instruction 4, that if Black & White sent a Checker cab in response to Love's telephone call then as a matter of law Black & White would be liable for the cabdriver's negligence. It seems to me that the trial judge really decided a question of fact that should have been left to the jury.

No particular significance can be attached to the fact that Black & White and Checker employed a common dispatcher. A cab company must evidently have someone continuously on duty to answer telephone calls for cabs, but in a city the size of Little Rock the calls cannot be so numerous as to take up much of the dispatcher's time. Hence it is sensible for two or more cab companies to reduce their overhead expense by using the same dispatcher, and this is true whether the companies are allied through stock ownership or are completely unrelated.

A joint adventure is in the nature of a partnership; each of the parties must contribute property or services to the undertaking and have a right to share in the profits of the business. *State ex rel. Atty. Gen.* v. *Gus Blass Co.*, 193 Ark. 1159, 105 S. W. 2d 853. We ought not to declare, as the majority opinion seems to do, that whenever two taxicab companies employ the same dispatcher they become joint adventurers as a matter of law and therefore assume liability for each other's negligence. It may be that in the case at bar there was sufficient evidence to justify a finding that a joint adventure existed, even though there was no such allegation in the complaint, but if so the issue was nevertheless one of fact, upon which

reasonable men might have differed. It should have been submitted to the jury.

The majority's alternative reason for upholding the instruction stands no better. As we observed in *Rounds & Porter Lbr. Co.* v. *Burns,* 216 Ark. 288, 225 S. W. 2d 1, it is *only* when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded. In the case at bar Black & White and Checker had the same officers and were owned by the same stockholders, but these facts alone do not destroy their separate identities. There is no. proof that, until this case arose, the existence of the two corporations had ever confused anyone. There is no proof that, until this case arose, the existence of the two corporations had ever worked to the injury of any third person. In fact, all that happened here was that Black & White concealed its position, by filing only a general denial, until after the statute of limitations had run against Checker. While there is evidence that would justify the jury in disregarding the corporate entities, the issue was one of fact that ought not to have been taken from the jury by the trial judge.