Howe v. Freeland.

5-3197                                    375 S. W. 2d 666

Opinion delivered February 24, 1964.

*Parker Parker,* for appellant.

*Robert J. White, James K. Young,* for appellee.

Carleton Harris, Chief Justice. Guy T. Freeland, Louise Freeland, his wife, and Mike Freeland, a minor, by his father as next friend, appellees herein, instituted suit against Freddie Lee Howe, appellant herein, for alleged personal injuries and property damage sustained in a wreck on November 27, 1962. Howe answered, denying negligence, and filed his counter-claim, seeking damages for personal injuries and property damage. Appellees then answered, denying all allegations. On trial, the jury rendered judgment against appellant, fixing

damages to Freeland in the amount of $1,700, to Mrs. Freeland in the sum of $1,000, and to the minor son in the amount of $300, and found against appellant on his counter-claim. From the judgment so entered, comes this appeal.

For reversal, it is first asserted that the court erred in refusing to grant appellant's motion for a new trial because the jurors, while separated, were exposed to improper influence. The case was tried on April 19, and both appellees and appellant concluded all of their evidence on that date. Argument in the case was to be heard the following morning.

On the night of the 19th, three boys were killed, and two others injured, in an automobile accident on Illinois Bayou Bridge, near Dover. The automobile in which they had been riding was practically demolished. According to the evidence, which was presented on the motion for a new trial, this wreckage was picked up by Cogswell Motors, and, at the direction of the Sheriff, placed in front of the courthouse. The Sheriff stated that he wanted people to see it, thinking it would have a salutory influence upon drivers who viewed it. The officer testified that he knew court was in session, but did not know what case was being tried. In his motion for new trial, appellant asserted that excessive damages were awarded to appellees because of passion and prejudice, occasioned by the members of the jury having viewed the wreckage in front of the courthouse (as they individually entered the building to complete the trial of the instant cause), and because of inflammatory statements made by appellees' counsel (hereinafter discussed).

We find no merit in this contention. In the first place, the record reflects no objection by appellant prior to argument before the jury, nor was there any request for the court to do anything at all. It must be remembered that appellant had likewise filed a complaint against appellees, and the jury, at that time, had not found appellant guilty of negligence. As far as counsel

knew, a verdict might be returned for Howe. At any rate, under these circumstances, the court could have committed no error, because it was not asked to take any action.

Point No. Two for reversal is closely related to the aforementioned argument. Appellant asserts that, before the opening of court, counsel for each side met with the judge in his chambers, and the latter admonished the attorneys to stay in the record, and not make any improper statements during the argument; that during the argument of appellees' counsel to the jury, he asserted that the defendant (appellant) "should be taught a lesson as shown by the wreck now in front of the courthouse." Counsel for Howe set out in his motion that he objected to the statement as inflammatory, and opposing counsel was admonished by the court to stay within the record. Subsequently, according to appellant, appellees' counsel, in closing, again stated "that we did not want to have any more wrecks like the wreckage in front of the courthouse." Appellant contends that these statements inflamed the minds of the jurors, causing them to bring in an excessive verdict.

The Deputy Prosecuting Attorney for Pope County testified that he "dropped in" the courtroom, and heard part of the closing argument of appellees' counsel:

"The only thing I heard, Mr. Parker, was Mr. White made reference to prohibiting the terrible wrecks like we had had last night, that was the only statement I heard, that was the only time I was here approximately 5 minutes. I dropped in to hear what was going on."

The court reporter testified that he did not take down the closing arguments, but, as he recalled, counsel for appellees made some reference to the wrecked automobile. The court stated that appellees' counsel twice referred to the wreck, that each time the attorney for appellant objected, and that it (the court) admonished the jury to consider only the record in the case being tried. Appellant's counsel also testified, and admitted

that the jury was admonished by the court both times. The court did not recall warning the attorneys, while in chambers, that they should "stay in the record."

We find no reversible error. Admittedly, the court admonished the jury to consider only evidence in the record each time that counsel for appellant objected. This apparently satisfied counsel, since he did not complain that the court's admonition was insufficient, nor did he move for a mistrial. It was only after an adverse judgment had been rendered that the assertion was made that the court's admonition was insufficient. In *Adams* v. *Summers*, 222 Ark. 924, 263 S. W. 2d 711, a witness made a statement relative to insurance. Appellant objected, and the court promptly sustained the objection, and admonished the jury to disregard the remark. Subsequently, the court, a second time, had occasion to admonish the jury not to consider any statements with reference to insurance coverage. On appeal, the appellants contended that a mistrial should have been declared, but we pointed out that no request for a mistrial was made after the jury was admonished not to consider the matter. In *Ocker* v. *Nix*, 202 Ark. 1064, 155 S. W. 2d 58, we said:

"It is next said that the court erred in permitting one of counsel for appellee to make a prejudicial argument to the jury, and in not declaring a mistrial because thereof. We cannot agree. The court sustained appellant's objections to the remarks when made and instructed the jury not to consider them."

Numerous cases could be cited to the same effect.

Appellant next contends that the jury's verdict for $3,000 was excessive. We find no merit in this argument. Mr. Freeland testified that his left knee struck the dash at the time of the collision, and that he had been troubled with the knee since that time, periodically wearing an elastic bandage. Freeland, who is serving with the United States Army, stated that he is an instructor, and is required to stand on the "platform" six hours per day.

He testified that his automobile had a value of $1,200 before the collision, and that the fair market value of the car was about $200 after the collision. The witness stated that he had expended $144 for doctor bills, and $71.60 for drugs.

Dr. Douglas Lowrey testified that an examination and x-ray revealed a diagnosis of ligamentous sprain of the left knee, and that Freeland would have had pain and tenderness for a couple of weeks; that the injury would cause at least a moderate amount of discomfort if Freeland had to stand on his feet for a long time. The doctor stated that any type of prolonged activity which required Freeland to be on his feet would produce pain. Of course, the amount awarded to this appellee included damages for both personal injuries and damage to the automobile, and we do not know the amount given for each. Appellant asserts that Freeland received $800 from his (Freeland's) insurance company in payment of damage to the automobile, and that the appellee stated that the value of the car, after the wreck, was $200, leaving the actual damage to the automobile at $600. This argument was based upon an intervention purportedly filed by the Southwestern Insurance Company, stating that the company had paid Freeland $800 for damage to the car and was entitled to subrogation in that amount. However, this intervention was stricken by the court before the trial got under way, the court holding that the intervention had not been properly filed. For that matter, the mere fact that Freeland had received $800 from his insurance company, even if that fact properly appeared in the record, would not be adequate grounds to reduce the judgment. As stated, we do not know how the jury prorated the $1,700 awarded to Freeland for personal injuries and damage to the car. It is entirely possible that only $800 was awarded for property damage. In addition, the alleged amount could have been paid by the company to Freeland as a compromise figure.

Mrs. Freeland testified that she received an injured back, a whiplash injury to the neck, and that both knees

were bruised; in fact, she "was bruised all over." The witness stated that she had not been able to perform her ordinary household activities, and that her neck and back still bothered her (at the time of the trial); that she was still taking "pain pills" and nerve medicine. She said that she used the heating pad on her neck at night, and had pain in the left hip when walking.

Dr. Lowrey testified that he took x-rays of the chest, left shoulder, four separate views of the neck or cervical spine, and x-rays of both knees and of the lumbosacral spine (lower back). The doctor stated that Mrs. Freeland had received an acute cervical sprain, a sprain of the muscles of the left shoulder and back, and contusions on both knees, and that these injuries were painful. When asked how long the pain could reasonably be expected to continue, he replied:

"To continue with—without any letting up, I would say over a period of approximately three to six months time, but as far as continuously moderately severe pain, probably only two weeks to a month, and Mrs. Freeland did continue to have a moderately severe amount of pain, particularly in the neck and back for, in fact, about two or three months.

"Q. Now, you say that you expect her to have that pain for that length of time and then additional pain for six months or longer.

"A. Yes, sir, three to six months, I would say."

Dr. Lowrey further stated that complete recovery would occur, but he did not know how long it would take.

"I would estimate in Mrs. Freeland's case that within one to two years, there should be recovery to the point that she would not expect flare ups."

The testimony reflected that the child, Mike, five years of age, was bruised on the head, legs, and back, and complained of pain for about a month and a half.

We agree with the remarks of the trial judge when he overruled the motion to vacate the judgment and grant

a new trial. After noting that it was considered that the admonition of the court to the jury was sufficient, that no record was made of the incident, and no mistrial asked for, he stated:

"As an additional reason for refusing to vacate the judgment, it is not my opinion that the amount awarded by the jury, that is the $300.00 to the minor child, $1,-700.00 to Mr. Freeland and $1,000.00 to Mrs. Freeland, show the result of any passion or prejudice or excitement on the part of the jury. In my opinion the judgment was extremely reasonable."

Certainly we are unable to say that the amounts awarded were excessive.

Finally, appellant asserts that the court erred in refusing to give his Requested Instruction No. 1, as follows:

"The Jury is instructed that the driver of a motor vehicle shall not follow another vehicle [closer] than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the Highway and one following another vehicle too closely is evidence of negligence."

We find no evidence that would justify the giving of the instruction.[1] Appellant, at one point, stated that the Freeland automobile was back of the truck about 228 feet; at another point in his testimony, he stated that appellees' automobile was following about 150 feet back of the truck. Freeland stated positively that he was never closer to the rear of the truck than 150 feet, and there is no testimony to the contrary. Under that proof, we

---

[1] The accident occurred at approximately 8:00 P.M., November 27, 1962, at New Blaine, Arkansas. According to the evidence, appellant was traveling west, and as he rounded the curve at New Blaine, he was "run off" the road by a truck, traveling east, that had just traversed a 255-foot bridge, straddling the center line. Appellant pulled off the highway about two feet, and traveled for approximately 147 feet. Howe stated that in pulling back onto the highway, he was blinded by the lights from Freeland's car, which was just coming over the bridge. The collision occurred 17 feet from the end of the bridge.

do not think that the instruction sought by appellant was justified.

No reversible error appearing, the judgment is affirmed.