**Anna G. KREDELL, as next friend of Mark Kredell, Plaintiff,**

v.

**Mahan SINGH, and Roy Clementon Tugwell, Defendants.**

**Civ. No. 3053.**

United States District Court, D. Canal Zone, Division Cristobal.

Sept. 26, 1973.

Harry H. Allen, Jr., Balboa, Can. Z., for plaintiff.

Woodrow de Castro, Balboa, Can. Z., for defendant Singh.

## MEMORANDUM OPINION ON THE QUESTION OF LIABILITY

CROWE, District Judge.

### STATEMENT OF THE CASE

This is an action brought by Anna G. Kredell as the next friend of Mark Kredell who was riding on a motorcycle during the early evening hours of December 26, 1969. He was riding on Randolph Road in Rainbow City, Canal Zone and an automobile-bus driven by defendant Roy Clementon Tugwell and owned by defendant Mahan Singh ran through a stop sign on Barbuda Street and entered Randolph Road directly in front of plaintiff's motorcycle causing him to collide violently with the bus. The plaintiff was physically injured and the motorcycle was destroyed.

The defendant Mahan Singh admits that the proximate cause of plaintiff's injuries was the negligence of defendant Roy Clementon Tugwell while operating the bus but he denies that he was Tugwell's employer or that he was acting as Singh's servant or agent at the time of the accident. Tugwell is not before the Court as he was never served with process.

By agreement of counsel this case is being submitted upon the question of liability on the part of Mahan Singh as the owner of the vehicle.

### FINDINGS OF FACT

1. Mahan Singh is a resident of Colon, Republic of Panama and he is employed by the Panama Canal Company in the Terminals Division in the Canal Zone as a Laborer with the job classification of Foreman.

2. The defendant Singh, at the time of the accident, owned two busses and was the owner of the bus with Panama license number G1-111 driven by defendant Roy Clementon Tugwell on December 26, 1969 which had the collision with the motorcycle of the plaintiff Mark Kredell.

3. The defendant Singh bought the bus on October 7, 1968 and he entered

into a rental agreement with Tugwell who operated it except when he was sick or drinking. On those days he would rent the bus to another person but Tugwell rented the bus most of the time. The bus was not permitted to operate as a bus in the Republic of Panama but it had a restricted route under authority of the Departamento de Transito in Panama whereby it could go from Colon to Rainbow City and return. When it was in the Canal Zone it could go anywhere collecting passengers and was not on any assigned route or franchise. Tugwell operated the bus not only in Rainbow City but Gatun also and sometimes he went to Porto Bello.

4. By reason of the rental agreement between Tugwell and Singh, Tugwell paid for the gas and oil for the bus and Singh made repairs for ordinary wear and tear and furnished the tires. When the bus was not in use at night sometimes Tugwell brought it to Singh's place who would check it over and see the condition of the bus, but this did not occur every night. Singh had no insurance on the bus and there was no money box on the bus where fares were dropped. The defendant Singh did not know how much Tugwell received in money from the passengers, nor was there any accounting made between them other than that the rental was paid which was $10.00 a day. He did not learn of the collision with plaintiff Kredell until two days after it occurred.

5. The contract between defendants Singh and Tugwell was a day-to-day contract that either had the right to terminate at any time.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the case.

2. The Canal Zone Code is a true code of laws for the Canal Zone and not simply a compilation subject to being supplemented by the common law. Panama Canal Company v. Wagner, 5th Circuit, 234 F.2d 163, 1956; 1 CZC 1.

"The provisions of this Code shall be construed according to the fair construction of their terms, with a view to effect its object and to promote justice." 1 CZC 66.

Maxim of Jurisprudence number (20). "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." 1 CZC 81.

Public policy is applicable in the Canal Zone as in other jurisdictions.

3. Public policy is a term not subject to precise definitions but is as broad as the question of what is fraud. It has been stated that it is the "principle of the law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good." 72 C.J.S. Policy p. 211; Peterman v. International Brotherhood, 174 Cal.App.2d 184, 344 P.2d 25, 1959. It has been further expressed that "it is that principle of law which provides that parties cannot agree to do anything which has a tendency to be injurious to the public or against the public good." Girard v. Anderson, 219 Iowa 142, 257 N.W. 400.

The power of the courts to formulate pronouncements of public policy is sharply restricted; otherwise they would become judicial legislatures rather than instrumentalities for the interpretation of the law. In the Canal Zone an unusual situation exists. There is no local legislative body and the public must resort to Congress, thousands of miles away, for legislative enactments.

In the continental United States the State legislatures have adopted comprehensive laws setting up plans for financial responsibility not only for busses serving the public but for privately owned vehicles. In the absence of such a legislature for the Canal Zone, the inaccessibility of Congress, and the lack of statutes requiring insurance, safety controls and financial responsibility, the courts must assume a more positive role in determining public policy than would ordinarily be appropriate.

4. The relationship that defendant Tugwell has with defendant Singh is obviously designed to be that of an independent contractor and thus relieve Singh of financial responsibility for the acts of Tugwell in the operation of the bus. Actually, in strict accordance with laws of the Canal Zone, the master and servant or principal and agent relationship between them does not seem to exist. See 4 CZC 2231 and 2661, the sections defining servant and agent. It has been held by this Court, however, in Roberts v. Archibold, Cristobal Division, Civil No. 1516 (1950), that a bus operator under a contract similar to the one in this case was not an independent contractor.

Arrangements of this kind are particularly repugnant as they are violative of the high responsibility owed by a carrier to passengers. A passenger-carrying bus is a dangerous instrumentality that should only be operated when there are financial responsibility, careful management and skilled operators in control of the vehicle. Owners and operators of passenger busses have an unusually high degree of responsibility to the public that they serve and an owner should not be permitted to operate a vehicle which is so potentially injurious or rent it out for operation without assuring the public protection. Agreements as that between Singh and Tugwell are not uncommon in this area but should not be condoned to the damage of other persons. Ostensibly the contract is designed to guarantee the bus owner a flat income for his vehicle but in addition it would set up a barrier to recovery against him for any damage caused by the negligent operation of the vehicle by the renter Tugwell. This is a fraud upon the public and a method of escape which should not be permitted.

5. Similar contracts in the continental United States where the common law is recognized have led to financial responsibility on the part of owners as a consequence of the tortious acts of the "leasor" of a vehicle. The cases cited in plaintiff's brief, McDonald v. Swanson, 103 Ind.App. 171, 1 N.E.2d 684, 1936, and Paige v. Red Top, Inc., 106 N.J.Super. 254, 255 A.2d 279, 1969, are quite similar to the case at bar. In the first case the driver was held to be the "servant or employee" of the owner and in the second case the court held that even though the driver may be held to be an "independent contractor" the defendant was liable on the theory that the driver was negligently operating the owner's franchise. The reasoning in those cases is persuasive in this case.

In Black and White, Inc. v. Love, 236 Ark. 259, 367 S.W.2d 427, 8 ALR3d 809, the Court of Appeals held that proof that a taxicab company was the owner of the vehicle being used as a taxicab was sufficient to make out a prima facie case to be submitted to a jury in the question of agency.

6. The contract creating the relationship of independent contractor is, for the above reasons, held to be violative of public policy. It is held further that the defendant Tugwell is an agent of defendant Singh who is responsible and liable for the damages suffered in the collision with the plaintiff.

The Clerk is directed to prepare a judgment on the question of liability and the case is continued for disposition of the question of damages with costs to the plaintiff.